## Dewitt *against* Eldred.

Devise to testator's wife of his real and personal estate, for her to be master and overseer of the whole until his son C. shall arrive at the age of 21, and then she is to be genteelly maintained by his son C. during her natural life; if she married, to have only the property she possessed when married; and provided she married before his son became of age, his executors were to lease or hire out the farm, and that money to be put to interest for the use of his son C. when he became of age, when he was to enter into full possession. He also gave him other specific lands, and then declared, " and the said land is all entailed to my son C. so that he shall not sell or dispose of the same." He then gave legacies to several daughters, to be paid by C. by instalments, after he came of age. *Held*, that C. took an estate tail by the devise.

Wherever there is an express limitation of the interest devised, a direction that the devisee shall pay pecuniary legacies does not make his interest a fee-simple.

It *seems* a simple bequest of a legacy to be paid by a devisee of land, without more, does not amount to a charge of the legacy on the land. In the absence of something to that effect, it is a charge on the devisee personally.

If a legacy to a *feme sole* be charged on land, and she marries, and her husband takes a bond for it from the devisee to himself, it extinguishes the charge.

ERROR to the Common Pleas of *Pike* county.

This was an action of ejectment brought by Electrian Dewitt, Jane Dewitt and James Dewitt, minors, by their guardian, William Brodhead, against Richard Eldred, John Edsell and Simeon Van Etten, to recover the possession of about 124 acres of land in Westfall township, Pike county.

The plaintiffs read in evidence the last will and testament of

[Dewitt v. Eldred.]

Cornelius Dewitt, in whom the title to the land was admitted to have been, dated the 27th of January 1806, the material part of which was as follows:

" As to my worldly estate, I will and positively order that all my debts be paid. First, I give to my dear and loving wife my real and personal estate, for her to be master and overseer of the whole until my son Cornelius shall arrive at the age of 21 years, and then she is to be genteelly maintained by my son Cornelius during her natural life; but providing she marries she is excluded from having the care or charge of any of my estate, only the property she possessed when I married her, she is to have that restored to her again—and provided she marries before my son becomes of age, my executors hereafter mentioned shall lease or hire out my farm, and that money put to interest for the use of my son Cornelius when he becomes of age, when he is to enter into full possession. I also give and bequeath unto my son Cornelius, all my lands: that is to say, first, the old farm whereon I now dwell, containing 115 acres, be the same more or less—200 acres called the saw-mill tract, warranted land, and 9 acres of improved land joining my old farm and lands of Peter Quick—*and the said land is all entailed to my son Cornelius so that he shall not sell or dispose of the same.* Likewise I give and bequeath unto my daughter Jane $100, and likewise unto my daughter Maria $100, *likewise unto my daughter Lydia* $100, and unto my daughter Hester $100, and unto Elizabeth $100, to be paid by my son Cornelius in the following manner: that is to say, after he becomes 21 years of age, he is to pay them each $25 a year until the whole is paid, without interest—and as for my daughter Jane, she is to receive $60, which there is but $40 more coming to her—and as for my moveable estate, to be equally divided between my six children, that is, my daughter Jane, Maria, Lydia, Hester and Elizabeth, and my son Cornelius—and for my daughter Lydia, Hester and Elizabeth, that is not married, providing they marry, are to have an out-set equal to Jane and Maria, that is married, before the estate is divided, and then all of them to share equally in all of my moveable estate. And I constitute and appoint Solomon Westbrook, Esq., and Jacob Quick, my executors of this my last will and testament, and trustees for my wife Maria and children."

Cornelius Dewitt, the devisee mentioned in the will, was deceased at the trial. The plaintiffs were his children, and his sister Lydia was married to Josiah Titsworth.

The defendants called Daniel Jayne, who testified, " This is a true transcript from my books as a justice of the peace; this is the bond on which that judgment is entered;" and then offered to prove by him what was said by the parties when they appeared before him, which was objected to until the transcript and bond were in evidence. The defendants then offered in evidence the transcript, filed in the Common Pleas on the 4th of February 1825,

[Dewitt v. Eldred.]

judgment before the justice for $140.14, entered to January term 1825; also the *fieri facias* on this judgment to April term 1827; levy 10th March 1827; inquisition and condemnation 16th April 1827; also a *scire facias* issued on the judgment to January term 1829, on which judgment was entered 21st January 1829, and on the margin of the docket-entry of which was written, "This for the use of Martin Titsworth;" also *venditioni exponas* to April term 1830, and return of the sheriff. The plaintiffs objected to the whole of this evidence, but the court admitted it, and the plaintiffs excepted.

The defendants then gave in evidence the bond on which said judgment was entered, and offered to prove that the consideration of the bond was the legacy to Lydia Dewitt, Titsworth's wife, as admitted, when the witness entered the judgment mentioned in the transcript, by Cornelius Dewitt, the defendant, and Titsworth the plaintiff, and by their declarations at that time. The plaintiffs objected to this offer, but the court admitted the evidence, and the plaintiffs excepted.

The witness testified, "Cornelius Dewitt and Josiah Titsworth came to my office with the bond and confessed a judgment on it, and Titsworth remarked that it was for his wife's legacy; that she had never had anything. Dewitt was present and made no objections. I do not recollect what he said, or that he said anything. I recollect very well that Titsworth said it in his presence."

The defendants then offered in evidence the sheriff's deed to Richard Eldred, dated 20th of April 1830, with certificate of acknowledgment in open court same day, and recorded 21st of May 1830. No entry of acknowledgment of the deed by the sheriff appeared upon the records of the court on search. The plaintiffs objected to the admission of this deed in evidence, because no acknowledgment of it appeared on the records of the court, but the court admitted the deed, and the plaintiffs excepted.

The plaintiffs then offered to prove by a witness that he was the attorney of the plaintiffs in the judgments and executions given in evidence, and purchased the property in dispute at sheriff's sale for Richard Eldred, to whom the deed was made, and that Eldred was then and still a practising attorney of the court. The defendants objected to this evidence, the court rejected it, and the plaintiffs excepted.

The plaintiffs then offered to prove the yearly value of the land, for the purpose of showing that the defendants would lose nothing even though a recovery should be had against them, and in connection with the terms of the will to raise an inference that Eldred only purchased a life estate. The defendants objected to this evidence, the court rejected it, and the plaintiffs excepted.

The plaintiffs then offered to prove by the ex-sheriff who signed the sheriff's deed given in evidence, when and under what circumstances he made the return to the *vend. ex. de terris* given in

[Dewitt v. Eldred.]

evidence by the defendants, to wit: at the instance of the defendant's counsel on the 17th of May 1841, the day of the meeting of the arbitrators in this case. The defendants objected to this evidence, the court rejected it, and the plaintiffs excepted.

The court, (Jessup, President), charged the jury that as there were no material facts in the case disputed or controverted, it became a question of law for the court under the whole evidence, and that the plaintiffs were not entitled to recover; that their verdict must be for the defendants.

The plaintiffs assigned for error the admission of the evidence mentioned in the 1st, 2d, and 3d, and the rejection of the evidence mentioned in the 4th, 5th, and 6th bills of exception, and the charge.

*Reeder*, for the plaintiffs in error, contended that Cornelius Dewitt took an estate tail under the will which descended to the plaintiffs, his children or some of them, unaffected by the judgment against him or the sheriff's deed to Eldred. No estate in fee is given either expressly or constructively. That the estate devised was in tail is evident from the express declaration of the testator that it was " entailed," which must be technically construed unless the intention of the testator to the contrary appears in the will. But the inference is fair that he intended an entail from the reason assigned, " so that he shall not sell or dispose of the same," meaning by common deed, mortgage or charge. 6 *T. R.* 352; *Cro. Car.* 292; 3 *P. Wms.* 26; *Lovelass on Wills* 275; 14 *Serg. & Rawle* 92; 1 *Serg. & Rawle* 157; *Ram on Wills* 263.

As to the allegation, that even if it was an estate tail, yet being made subject to the payment of the legacy, a sale of the land by execution on a judgment for the legacy would pass a fee according to *Gause* v. *Wiley*, (4 *Serg. & Rawle* 509), various answers may be given. In the first place, the legacy was not charged on the land; it was a mere personal charge on the devisee, if he thought fit to accept the devise. Besides, to pass the fee in the land by sale on a judgment, even if the legacy was charged upon it, the nature of the claim must appear on the record of the suit, and the suit must be on the legacy itself, and not on a bond given for it, and parol evidence cannot be received to show what the ground of the suit was, so as thereby to change a fee-tail into a fee-simple. 1 *Serg. & Rawle* 92; 3 *Serg. & Rawle* 141; 2 *Binn.* 80; 3 *Wils.* 376. Moreover, the legacy was extinguished by the bond, and it became the debt of the husband.

*J. M. Porter*, *contra*, argued that Cornelius Dewitt took a fee-simple by the will. First, the testator expresses his intention to dispose of " all his worldly estate," and gives to his wife " all his real and personal estate," till Cornelius arrives at 21, at which time he is " to enter into full possession," words which would

IV. — 53

[Dewitt v. Eldred.]

carry a fee according to *Willis* v. *Bucher*, (2 *Binn.* 455); S. C. 3 *Wash. C. C. Rep.* 169; 1 *Roberts on Wills* 405, 425, 427. The subsequent words declaring that the land " is all entailed to my son Cornelius, so that he shall not sell or dispose of the same," do not lessen the quantity of estate before given; they are merely meant in restraint of alienation, which, when annexed to a fee, are void. 10 *Watts* 328. And the word " entailed" is not a technical word like " heirs of the body," or " issue," in a deed or will. Then again, charging the land or person with the payment of legacies carries a fee if there be a possibility of loss to the devisee by their payment, unless otherwise directed. 1 *Roberts on Wills* 405, 428, 460; *Co. Lit.* 9 *b.*; *Cro. Car.* 157; 6 *Cruise* 253; *Cowp.* 352; 8 *Vin. Ab.* 208, 253; 2 *Prest. Est.* 157; 1 *Pick.* 318; 2 *Vern.* 551; 1 *P. Wms.* 87; 2 *Pow. Dev.* 377, 394. If, however, the estate in Cornelius was a fee-tail, yet being charged with the legacies, a sheriff's sale on a judgment obtained for one of the legacies against the devisee passes a fee-simple to the purchaser. *Gause* v. *Wiley*, (4 *Serg. & Rawle* 509). Here the land was charged with the legacies, and the bond did not extinguish the lien. 4 *Watts* 378; 1 *Whart. Dig.* 201.

The opinion of the Court was delivered by

KENNEDY, J.—It is unnecessary to consider the errors founded upon the bills of exception to the admission and rejection of evidence, as we are of opinion from the facts of the case, established as it appears by the evidence beyond all doubt or controversy, that the defendants or any one or more of them have no right whatever to hold the land in contest against the eldest son of Cornelius Dewitt, who is one of the plaintiffs, and claims as heir in tail to his father, according to the form of the gift contained in the last will of Cornelius Dewitt, his grandfather.

The defendants also derive their claim to the land from the same will. On their behalf it is alleged that Cornelius Dewitt, the devisee and father of the plaintiffs, took an estate in fee in the land under the will, and that his right therein, as such, passed by the sheriff's sale to Richard Eldred, one of the defendants, under whom the other defendants claim. In the expounding of wills the rule of law is, that a devise of land, without words of limitation added, only gives an estate for life, unless it can be found from the whole of the will taken together, and applied to the subject-matter of the devise, that the testator's intention was to give a fee. But, in order to make a devise of land *without limitation* added a fee, such an intention must appear, as is sufficient to satisfy the conscience of the court in pronouncing it such; if it is barely problematical, the rule of law must take place. *Bowes* v. *Blackett*, (*Cowp.* 238, 240). As to the present case, it is clear that an estate in fee is not expressly given, nor yet in technical terms, by the will to Cornelius the devisee. An effort, however, has been made, by the

[Dewitt v. Eldred.]

counsel for the defendants, to show that such was the intention of the testator, by taking parts of the will merely into view without regarding other parts directly applicable to the devise. This, as is alleged, appears, first, by his giving to his wife his "*real* and personal *estate*, for her to be master and overseer of the whole, until his son Cornelius should arrive at the age of 21 years, after which she was to be genteelly maintained by his son Cornelius during her natural life," the testator has shown by his using the terms "real and personal estate," that it was his intention to dispose of *all* the *interest* he had in his land; but it is manifest that the phrase relied on here was used by the testator merely for the purpose of *describing* or *designating* the *specific estates* or *objects* which his wife should have the charge and management of until his son should attain full age, and not the *quantum* of *interest* that he had in what he was about to dispose of. *Hogan* v. *Jackson*, (*Cowp.* 306); *Morrison* v. *Semple*, (6 *Binn.* 97); for he expressly limits her care and superintendence of the same to her widowhood or the time at which his son should attain full age at farthest. And besides, this "real and personal estate," over which the wife was to have a superintendence during her widowhood or the minority of the son, is not given, either in part or in whole, by the *same description*, to the son. The testator simply declares that "he (meaning his son) is to enter into full possession of his (meaning the testator's) farm, after having previously directed it to be leased out by his executors, until his son should arrive at full age, in case his wife should marry before that time. But then it is also alleged that the clause just recited, which directs "he is to enter into *full* possession of his farm," shows that the testator thereby intended to give his son a fee-simple estate in the farm. Directing, however, that the son shall enter into full possession of the farm, without more, can only be considered as giving to him the full and entire possession of it for his life. The words "*full* possession" cannot be regarded, as contended, as of equal force and meaning with the words "*freely* possessed and *enjoyed*, which have been held sufficient to pass a fee-simple estate in a devise of land. *Campbell* v. *Carson*, (12 *Serg. & Rawle* 54). In order to render a sale of land, situate in Pennsylvania, effective, it is not requisite that the vendor should have the possession or a seisin in fact of the same; it is sufficient if he has a good title for it. Neither can it be said, that a right to the full possession of land necessarily gives the party, invested with it, a right, either to hold or dispose of it in fee. A right to possess it *fully*, that is, to the utmost extent of its boundaries, may exist very well, without having a fee-simple estate therein, or a right to sell and dispose of the fee. But to sell and dispose of land in fee may, with some propriety, be said to be one mode of *enjoying* it, and therefore whenever it is given by will to be "*freely* enjoyed," that is, without limitation or restriction of any kind, it would necessarily seem to imply that

[Dewitt v. Eldred.]

the testator intended that the devisee should have a fee-simple estate therein, unless other words were used by him showing that such was not his intention.

But it has been further contended that the moneys bequeathed by the testator to his daughters, to be paid by his son as directed in the will, show, according to the presumption which the law makes, of every testator's intending to confer a benefit on the devisee by the devise, that the testator must therefore have intended, in this case, to give his son Cornelius a fee-simple estate in the devise, otherwise the latter, by paying the moneys as directed to the daughters, might be subjected to a loss instead of receiving a benefit; because it might be, for aught that could appear to the contrary, that he could not derive from the possession of the land for the term of his life merely, sufficient means to enable him to pay his sisters their respective legacies as they should become payable by the will; but invested with the fee-simple estate in the devise, he could make it amply sufficient for that purpose by either mortgaging or selling it if requisite.

Now in respect to the first and second grounds upon which it has been contended that Cornelius, the son, took a fee-simple in the land under the will, there does not appear to be the slightest colour for holding them tenable, unless the subsequent clause of the will, which declares that " said land is all *entailed* to my son Cornelius, so that he shall not sell or dispose of the same," be thrown out of view altogether. But in construing the will of every testator, it is a well-settled rule that effect shall be given to every material word contained in it, if it can be done consistently with the other parts thereof, and with the rules and policy of the law relative thereto. Hence, by giving effect to the clause just recited, all speculation as to the nature and *quantum* of estate, which the testator intended his son should have in the land, would seem to be completely shut out, for he has thereby, in the most explicit terms, declared that it is *all entailed* to his son; in other words, that his son Cornelius shall have a *fee-tail general* in all his land, and nothing more or less. The language of the clause in this respect is free from all ambiguity, and wholly incapable of receiving any other meaning, whether taken in a legal or common sense. In order, however, to parry the force and avoid the natural operation of this clause, it is alleged on behalf of the defendants, that it must be considered as a condition annexed or direction imposed on the devisee not to sell or dispose of the land in which the testator had previously given him a fee-simple estate, and being repugnant thereto is therefore void, and of no effect whatever. If it were so, that the testator had previously given a fee-simple estate in his land to his son, and the clause under consideration could be fairly construed as a condition or direction imposed on the devisee not to alien the same, the conclusion would doubtless be correct. 1 *Inst.* 222 *b*, 223 *a.* But it is proper to observe that the fee-simple contended for here, is neither given in express

[Dewitt v. Eldred.]

or technical terms, and can only, at best, be made out, if at all, by an intendment that is very far from being clear; but even if it were clear, it would make no difference as to the effect of the clause in question, for it repels in the most explicit terms all intendment of the sort, by declaring that " the said land is *all entailed* to my son Cornelius, so that he shall not sell or dispose of the same." These latter words, " so that he shall not sell or dispose of the same," do not appear to have been inserted for the purpose of annexing any condition to the gift, but merely for the purpose, as it would seem, of showing why it was that the testator intended his son should have an *estate-tail* in the land devised to him, which makes the case still stronger, if possible, against the testator's having intended that his son should, under any circumstances, take a fee-simple estate therein. And although the testator may have been mistaken as to the extent of the power which his son, as tenant in tail, might exercise over the land devised to him, yet it is impossible to say, or even to conjecture, what the testator would have done, if he had been advised of his mistake. He might still have done exactly what he has, or he might have given his son only a life estate, or he might possibly have given him a fee-simple ; but certainly it is utterly impossible to determine with even the least degree of probability, what estate he would have given his son in the land, if it really be that he was under any misapprehension, and it had been corrected in due time. It, however, does not appear distinctly that he was under any mistake in regard to the extent of the restriction which he placed on his son in alienating the land, by giving him only an estate-tail in it. It may be that he thereby only intended to restrain him from aliening it by will, or by deed, in the usual form as if he had a fee-simple, or from depriving his issue of the benefit of it by contracting debts. Indeed it is most probable that he knew that his son would have it in his power, if he chose, to break or bar the entailment. To do so, is a privilege or incident inseparable from such estate; and generally, I take it, equally well known with the power, that every owner of land in fee-simple has, of disposing of it in tail if he pleases; so that the testator most likely knew, when he entailed the land on his son, that the latter would have it in his power, as soon as he became invested with the estate and attained full age, to bar it either by suffering a common recovery, or by conveying the land in the manner directed by our Act of Assembly for that purpose. It was not in the power of the testator, after giving his son an estate-tail in the land, to restrain him from breaking the entailment, by any prohibition, condition or limitation that he could think of. See *Taylor* v. *Horde*, (1 *Burr.* 84), and the cases there cited; *Doctor & Stud.* 89; *Cholmeley* v. *Humble*, (1 *And.* 344, 374); *Duncombe* v. *Wingfield*, (*Hob.* 261); *Stukeley* v. *Butler*, (*Id.* 170); *Corbet's Case*, (1 *Co.* 83 *b*); 1 *Inst.* 223 *b*, 224 *a*.

[Dewitt v. Eldred.]

It is manifest, therefore, that the words "so that he shall not sell or dispose of the same," can have no effect or operation whatever upon the clause immediately preceding, which declares that "the said land is all entailed to my son Cornelius."

Then as to the third ground, upon which it has been argued that Cornelius, the son, took a fee-simple estate in the land devised to him, which is, that by the testator he is directed to pay certain sums of money to his sisters. Now no doubt it has long been established that a direction imposed on a devisee to pay a gross sum or sums of money enlarges the devise to an estate in fee-simple where there are no words of *limitation*. See 2 *Pow. on Dev.* 379, and the cases there cited. But wherever there is an express limitation of the interest devised, such direction of the testator is never allowed to have any such effect. For instance, if the devise be limited to the devisee for life only, with a condition annexed or direction imposed, that he shall pay a gross sum of money to one named in the will, no implication can be made to enlarge the devise to an estate in fee contrary to the express limitation of it, which is for the life of the devisee only. *Burdett* v. *Wright*, (2 *Barn. & Ald.* 710). In *Doe* v. *Fyldes*, (*Cowp.* 841), Lord Mansfield declares that there never was an instance where an express estate for life, or an *express estate tail* is given in terms, of its having been enlarged to a fee-simple estate by *implication*, on account of a condition or direction imposed on the devisee to pay a gross sum of money; and accordingly it was held by the Court of King's Bench, in the case of *Slater* v. *Slater*, (5 *Term Rep.* 335), that charging the devisee, to whom an estate-tail was expressly given, did not and could not enlarge the gift to a fee-simple estate. See also 2 *Pow. on Dev.* 426.

A fourth ground of defence taken by the counsel of the defendants in the argument was, that the judgment under which the land was sold by the sheriff, by virtue of which sale the defendants claim, was had upon a bond given by Cornelius, the devisee of the land, to the husband of Lydia, one of the legatees named in the will, who was a *feme sole* at the time of making it, as also at the death of the testator, but was married afterwards, to secure the payment of her legacy, and that by the terms of the will the legacy was charged on the land so sold. This ground of defence would seem to militate against the third ground of defence just noticed; because, if it be that the testator has made the land alone liable for the payment of the legacy, the devisee, according to the authorities on this point, could not be held personally bound for the payment of it, because the testator having made the land liable for it, into whatsoever hands the land might happen to fall, could not have intended that the devisee should be personally answerable for it also; and consequently no ground existed for enlarging the estate of the devisee beyond what was expressly given. See 2 *Pow. on Dev.* 382, *et seq.*, and the cases there cited.

[Dewitt v. Eldred.]

Now it may be, if the testator had charged the legacy given to his daughter Lydia on the land, though it were devised expressly in tail, and the husband of Lydia had not afterwards taken a bond to himself alone from the devisee of the land, securing the payment of the legacy to himself, thereby reducing it to his own possession, and in effect discharging the land from the lien, if any were created by the testator for the payment of it, that a sale of the land made by the sheriff under a judgment obtained by Lydia and her husband for the amount of her legacy, to be levied out of the land, would have passed a fee-simple estate therein to the purchaser. See *Clowdsly* v. *Pellham*, (1 *Vern.* 411), where the devisor after devising his lands in tail, charged them with the payment of his debts, and they were accordingly decreed to be sold for that purpose from the devisee upon his failing to pay the debts.

But it appears to me that the testator, in this case, did not intend to charge the legacy on the land, for there is no clause or words to be found in the will to that effect. He certainly has not done so in terms; nor has he used any words from which an intention to do so can be fairly inferred. He has, after devising the land to his son, by a subsequent and distinct clause simply bequeathed the legacy to his daughter, to be paid to her by his son, without more. If he had said, " to be paid by his son *out of the land* devised to him," or anything of the sort, there would have been some ground for claiming that the legacy was a charge upon the land. In the absence, however, of everything of the kind, the legacy must be considered as a *charge* on the *devisee* in respect of the land devised to him, and not a charge upon the land itself. But if it had been made a charge upon the land by the devisor, that charge would have been completely removed by the husband of Lydia's taking a bond from the devisee of the land, securing the payment of the legacy to himself for his own use. Neither he nor she, or both of them together, could, after that, have claimed the legacy by force of the will simply, for all claim to it by Lydia, the devisee named therein, would have been, and was in fact and in law thereby discharged, and for ever thereafter ceased to exist. The husband alone, or his representatives, whether his wife survived him or not, became entitled to receive under the bond taken by him, and not under the will, all that was thereafter to be paid on account of the legacy. The husband, by taking the bond of the devisee of the land, extinguished the legacy coming to his wife under the will; it thereby became the personal debt of the devisee, payable to the husband alone. The utmost, therefore, that the purchaser at sheriff's sale could get was a right to hold the possession and receive the profits of the land during the life of Cornelius, the debtor in the bond, when the eldest son of the latter, who is one of the plaintiffs here, became entitled to it as tenant in tail, according to the form of the gift contained in the will.

Judgment reversed, and a *venire de novo* awarded.