## Nathalie C. Boyer *v.* Charles Chauncey, Appellant.

*Decedent's estate—Premiums paid for investments—Where charged.*

The premiums paid for investments are to be charged to principal and not to income, and a trustee is not justified in withholding a part of the income to meet a diminution of principal which may not even take place.

Where the will directs that "the net income" is to be paid to the life tenant, it means that no deduction is to be made on account of any premiums paid for investment.

Argued Dec. 15, 1899. Appeal, No. 204, Oct. T., 1899, by defendant, from decree of O. C. Phila. Co., Oct. T., 1896, No. 552, dismissing exceptions to adjudication. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by RICE, P. J.

Exceptions to adjudication of FERGUSON, J.

It appears from the record that decedent's will gave enlarged powers of investment to the trustees and bequeathed a certain portion of his estate to his executors in trust for his daughter, Nathalie C. Boyer, under a separate use trust to pay her the net income for life with remainder over to the children of said daughter. At time of his death the daughter was married. The trustee in his account claimed credit for certain fees, commissions and premiums on investments. The auditing judge

disallowed the credit claimed for the premium paid on investments purchased, and the court in banc dismissed the exceptions to the adjudication in the following opinion by PENROSE, J.:

The questions raised by these exceptions were passed upon and decided in Furness's Estate, 12 Phila. 130, where it was said: "If the premium paid for investments is to be charged to income and not to principal, it must often happen that the persons entitled to the former will be left without means of support. Take the case of a purchase of city loan, now selling at $113, under a trust to pay income to a widow for life with remainder to her children. If she should die within two years after the investment, she would receive no income at all, and the securities would, perhaps, sell for as much as they cost. The party who is to receive income is not often consulted with regard to the mode of investment, and the amount paid in the way of premium is usually dependent upon other considerations than mere productiveness of income, e. g., the facility of transfer, ease of conversion into cash, etc., of more importance to the ultimate owner of the principal than to the recipient of the income."

The point did not arise in Cridland's Estate, 132 Pa. 479, in the Supreme Court or in the court below, and was not discussed or even alluded to. We see no reason whatever for changing the views expressed in Furness's Estate. If the premium on bonds which a trustee is permitted to invest in, under the law generally or under the terms of the instrument creating the trust, were always measured by, and dependent upon, the amount by which the income yielded exceeds the ordinary current rates of interest, taking into consideration the time that will elapse before their maturity, there would, at least, be an appearance of equity in charging the tenant for life with some part of the loss of principal caused by the retention of the investment until it is paid off at par; but even in such case something is due him by way of compensation for interest on principal, tied up by having been applied in payment of premium, which might have been otherwise invested. But the rate of income yielded has little to do with the question of premium, nothing, indeed, in the case of municipal, state or national securities, which sell at very high prices and pay but small in-

terest even on the par value, as in the case, for example, of United States 4's, now quoted at $125 to $130. The premium is largely for the supposed greater security, and still more, perhaps, as they are but little, if at all, influenced by speculative causes, because they can always be readily converted into cash, and practically without loss, whenever it becomes necessary to realize the principal for final distribution; and there is the further reason that the holder is under no necessity of being on the watch for sheriff's sales, payment of taxes, etc., as in the case of mortgage securities, and he is, moreover, relieved of any trouble by reason of being compelled to enforce collection by suit.

It is clear that the interests of the tenant for life have no concern with either of these reasons, and so far as regards security, he asks for nothing better than a mortgage on property with sufficient margin of value, which, even at a low rate of interest, as the whole principal is invested at par, will pay him as much, if not more, than a security, nominally yielding higher rates of interest, but, by reason of the premium, requiring a larger investment of principal to procure it.

If, on the other hand, security is the only consideration, the remainder-man certainly is no less interested in this than the tenant for life, and the cost of obtaining it should be borne by both, proportionately. Take, for example, a bond for $1,000, at four per cent, payable in ten years and costing $1,100. If the tenant for life is fortunate enough to live until the bond matures, he will have received in the way of interest $400, or $40.00 per annum, while principal has $1,000; and the loss of $100, premium, or original cost, ought to be divided in that proportion. Upon this point the cases of Cox v. Cox, Law Rep. 8 Eq. Cas. 343, In re Moore, 54 L. J. N. S. Ch. 432, and Ketchum v. Duncan, 96 U. S. 659, will be found instructive. But suppose the tenant for life should, before the bond matures say within a year after the purchase, die, and the security be sold at, or near, the original cost?

Upon what theory, therefore, can a trustee be justified in withholding part of the income to meet a diminution of principal which may not even take place at all? It would seem, indeed, whatever may be the law elsewhere, that our statute forbidding accumulation except during an existing minority

and for the benefit of the minor, effectually prevents this, for the withholding of any part of the income to create a fund to be applied to the restoration of principal comes directly within the ruling in Washington's Estate, 75 Pa. 102, and the numerous cases which have followed it.

A Massachusetts case, New England Trust Co. v. Eaton, 140 Mass. 532, is cited by the exceptant and relied upon as settling the question.  The case was decided by a bare majority of the court, a dissenting opinion by Judge HOLMES being concurred in by the chief justice and Judge CHARLES ALLEN; and its unsoundness, on principle, is demonstrated in a very able article published in 34 Albany Law Journal, 144.  But Massachusetts decisions, even when unanimous, and English decisions, in cases involving questions between income and principal, as, for example, Minot v. Paine, 99 Mass. 101, Daland v. Williams, 101 Mass. 571, In re Barton's Trust, L. R. 5 Eq. Cas. 238, and Hooper v. Rossiter, 1 McClel. 527, as against Earp's Appeal, 28 Pa. 368, etc., are unsafe guides for Pennsylvania lawyers; and until the Supreme Court of this state shall lay down a different rule, we will adhere to what we have already decided, especially as it is fully sustained by decisions elsewhere: Bergen v. Valentine, 63 How. Pr. 221; Townsend v. U. S. Trust Co., 3 Redf. 220; Matter of Pollock, 3 Redf. 100; Whittemore v. Beekman, 2 Dem. 275; Hite v. Hite, 20 S. W. Rep. 778.

Irrespective of the question of accumulation or of any other consideration, it is quite clear that under the will which creates this trust there can be no withholding of income to meet apprehended loss of principal.  The testator has directed that "the net income," that is the whole net income, shall be paid to his daughters for life, and he has relieved the trustees from liability for loss from investment in other than legal securities.  If in spite of all this, part of the income may be withheld, the daughters, the chief objects of his bounty, would be made to suffer in order to save the persons entitled at their deaths, whom he never knew, and for whom he could have no special solicitude.  Even in Massachusetts, under these circumstances, it would seem that the case would be decided in favor of the cestuis que trust. See Shaw v. Cordis, 143 Mass. 443.

Exceptions dismissed and adjudication confirmed absolutely. Charles Chauncey appealed.

*Errors assigned* were (1) in decreeing that the trustees must charge the entire premium on securities purchased for the trust estate above their par value against the principal of said trust estate. (2) In decreeing that the trustee must not deduct any part of the income of a security to make good the loss of premium thereon which will occur at the end of the period which said security has to run. (3) In decreeing that "under the will which creates this trust there can be no withholding of income to meet apprehended loss of principal." (4) In decreeing "that our statute forbidding accumulation except during existing minority, and for the benefits of the minor" prevents "the withholding of any part of the income to create a fund to be applied to the restoration of principal." (5) In dismissing the exceptions of appellant and confirming absolutely the adjudication on said account.

*Charles Chauncey*, and *Geo. Tucker Bispham*, for appellant. —The question presented by this record is whether the income of a cestui que trust tenant for life should not be charged with all or some part of the premium paid on investments in legal securities; and if so, on what, if any, terms or conditions should the charge be made.

Trustees of settled property hold as much for the protection and benefit of those entitled in remainder as of those to whom the immediate beneficial enjoyment is given.

The corpus of the estate must be kept intact for the benefit of the remainder-man and in interest producing securities for the benefit of the life tenant: N. E. Trust Co. v. Eaton, 140 Mass. 532, 539; Hubley's Est., 41 Leg. Int. 66.

The duty of trustees as to the character of their investments is set forth in Lewin on Trusts, 306, and Harvard College v. Amory, 26 Mass. 446.

The tenant for life is entitled to the annual income. English cases decide that tenant for life is entitled "to the entire actual income" of "an authorized permanent investment:" Hemenway v. Hemenway, 134 Mass. 446.

But the real income of a bond purchased above par, say at

120, an investment which may be safe and prudent, is not the amount received annually, but the amount after deducting the same necessary to restore, at the end of ten years when the bond is due, the $20.00 premium. The premium is only an advance from capital which the remainder-man is entitled to have repaid; if it is not, the property is diminished solely for the benefit of the tenant for life: N. E. Trust Co. v. Eaton, 140 Mass. 532; Perry on Trusts, sec. 547; Hemenway v. Hemenway, 134 Mass. 446, 451.

If the tenant for life die before maturity he will have paid no more that his just proportion: N. E. Trust Co. v. Eaton, 140 Mass. 532.

Into the question how much income does such an investment produce must enter as a factor the loss of the premium which is inevitable at maturity, because I think the owner of the principal ought not to have that principal diminished in order to give a larger income to the person entitled only to the income for life: Farwell v. Tweddle, 10 Abb. N. C. 94.

*H. C. Boyer*, with him *Geo. P. Rich*, for appellee.—We contend that testator did not contemplate that any premiums or broker's commissions on investments should be deducted from his daughter's income for the benefit of her unknown issue.

For our argument we submit the opinion of the learned court below, sustaining the adjudication, and the reasoning of the cases therein cited, particularly Hemenway v. Hemenway, 134 Mass. 446, Shaw v. Cordis, 143 Mass. 443, the dissenting opinion of HOLMES, J., in New England Trust Co. v. Eaton, 140 Mass. 532, and the article, Life Tenant and Remainder-man, 34 Albany Law Journal, 144.

We further contend that the costs of this appeal should not be borne by the life tenant. The determination of the questions here involved are as much for the benefit of the remainder-man as the life tenant.

Legal expenses incident to the administration of a trust almost exclusively fall on capital: Underhill on Trusts (ed. of 1896), pp. 246, 252.

Splanger's Estate, 21 Pa. 335, and Butterbaugh's Appeal, 98 Pa. 351, do not determine the question here involved, because in this case the account is filed for the purpose of obtaining an

adjudication of the rights of the life tenant and remainder-man, and for the instruction and protection of the trustee.

To adopt as an unvarying rule the decision in Butterbaugh's Appeal; charging income with court costs, would be plainly inequitable in many cases: Lafferty's Estate, 184 Pa. 505, 512.

Income should pay the cost of "its administration," but not the cost of administration of the entire estates of life tenant and remainder-man.

OPINION BY RICE, P. J., February 16, 1900:

This estate is held by the appellant in trust to pay over the net income thereof to the appellee during her life, and on her death to convey and transfer the principal to her child or children or the issue of such child or children who may be then living, and if she shall die without issue then to her brothers and sisters. The will creating the trust further provided as follows: " The proceeds of any sales of real and personal estate sold by her executors . . . . I direct to be invested . . . . and held for the purposes of my will, in such stocks, loans or securities as he or they may deem most advantageous without regard to whether such investments shall be such as would without this power be sanctioned by the courts having jurisdiction of the accounts of my executors." After the date when this trust became operative the appellant bought as an investment five per cent first mortgage gold bonds of the Equitable Illuminating Gas Company, amounting to $2,000 on their face, for which he paid a premium amounting to $58.05. In his second account stated on May 1, 1899, he charged himself with the total income received from December 13, 1896, to date, and took credit for the premium paid on the above investment. Other questions were raised in the court below, but the sole subject of review on this appeal is the disallowance by the court of this credit.

It is frankly conceded by the appellant and his counsel that the entire premium could not be deducted at once from the income. The unreasonableness of permitting that is so clearly shown in the opinion of Judge PENROSE in Furness's Estate, 12 Phila. 130, quoted in the opinion filed in the present case, as to render it unnecessary to say anything further upon that point.

But it is contended that such an annual proportionate deduction should be made from the income as would, if continued until the end of the term of the securities, make up the loss of premium sure then to occur.   Even conceding the correctness of this proposition it would be impossible to determine what deduction ought to be made from the income for the years covered by this account without knowing the term for which the securities in question are to run.   And, although we have examined the paper-books with considerable care, we cannot find that this fact appears anywhere in the record.   We are not disposed, however, to dismiss the case upon this ground, and in the view we take of the case the omission of this fact from the evidence is immaterial.   An obvious objection to the rule as above stated is that if the term of the security. is long, and the life tenancy of short duration it must often happen that at the expiration of the latter the security will be worth as much as was paid for it.   In such cases no loss of principal will have occurred, and hence no just reason for holding that the interest received from the investment in the mean time was not the true net income.   It comes then to this, may the trustee withhold, either absolutely or conditionally, part of the income to make good a diminution of principal, which, possibly, but not certainly, may occur at the expiration of the life tenancy?   We recognize the importance of the question and are not rash enough to assert that the arguments in support of the appellant's contention are without force.   But upon a full and deliberate consideration of the matter we conclude with the court below that, under the will which created this trust there can be no withholding of income to meet apprehended loss of principal which may never occur.   Irrespective of the question of the applicability of the statute against accumulations, this seems to us the better view, and the conclusion more likely to effectuate the true intent of the testator than that contended for by the appellant.   We can add nothing profitably to the discussion contained in the opinion of the learned judge of the court below and in the authorities referred to and discussed in his opinion.

The decree is affirmed.