## Trexler's Estate

*Reuben J. Butz*, for accountants.
*Wilson A. Wert*, for City of Allentown.

GEARHART, P. J., April 13, 1938.—The accountants request credit of $61,060.16 for premiums paid on bonds purchased during the accounting year, which they request be amortized over a period of years, and to allot the sum of $1,456.50 to the present accounting as a credit.

The effect of this plan of procedure would be to restore the entire premium paid to corpus at the maturity of the bonds.

The City of Allentown, which is entitled to one fourth of the residuary income under the testator's will, objects to the amortization of the premiums. It argues that under the few available decisions of the appellate courts of our State the premium paid on investments is chargeable to principal and not to income: Penn-Gaskell's Estate (No. 2), 208 Pa. 346; Boyer v. Chauncey, 12 Pa. Superior Ct. 526.

The trustees, while frankly acknowledging that in the two adjudicated cases of our appellate courts the rule has been to charge the premium paid against corpus, urge that the facts before us are so unlike the cases decided that the rule should not be here applied. The trustees point out that under the Trexler will a perpetual trust is created for the benefit of the charities; that the reasons stated for charging corpus with the premium in Penn-Gaskell's Estate (No. 2), supra, and Boyer v. Chauncey, supra, do not obtain here.

In Boyer v. Chauncey, we find that the will of the decedent gave enlarged powers of investment to trustees, bequeathing a certain portion of the estate in trust for a daughter under a separate use, to pay her the net income for life with remainder over to her children. The trustee in this account claimed credit, inter alia, for premiums on investments. The credits were disallowed by the auditing judge. On appeal, the Superior Court affirmed the action of the lower court. An examination of the case indicates that the court based its opinion upon three factors: (1) The intention of the testator would be given fuller

effect by disallowing the charging of premium against income; (2) because the duration of the life tenacy was unascertainable and hence might be so short that the security would be worth as much as had been paid for it, in which case no loss of principal could occur and the withholding of premiums from income would be inequitable to the life tenant; (3) because the term of the securities was not known.

In Penn-Gaskell's Estate (No. 2), supra, the lower court refused to surcharge the trustee with loss sustained by the payment of premiums on municipal and other bonds purchased. The Supreme Court affirmed, prefacing its decision with the statement:

"No rule on this subject can be stated that in all cases will produce an equitable result."

In weighing the question as to whether the income or the corpus should carry the burden of the premiums, the court was dealing with the ordinary life estate followed by a remainder over; the case where death must come to A sooner or later, at which time B would take the corpus. In approaching the question the court took into consideration and applied the presumption that the life tenant is the primary and immediate object of the testator's bounty and, that being so, should not be deprived of any income by charging premiums to him. Further, premium bonds in the main represent security of principal, and consequently the principal should carry the charge. Said the Supreme Court, inter alia:

"Premiums do not represent higher interest but safety and permanency of the investment and facility of transfer and use. These are matters in which the life tenant has less interest than the remainderman because he has less at stake. And he pays in part for safety and permanency whenever securities are bought at a price above par. . . . It apportions more equitably than any other the charges which each interest in the estate should bear for the preservation of the principal, and it prevents the

positive injustice of charging the life tenant for a loss which may never be incurred."

In short, both the appellate decisions were decided on facts that are not present in this case. Here the beneficiaries and theoretical remaindermen are one. The beneficiaries are the charities and the City of Allentown, and the trust is to be carried on perpetually. The beneficiaries are just as much interested in preserving the principal as are the trustees, for they, like everyone else, realize that if the principal diminishes, it follows that the income must also. In a trust such as here there is danger of a gradual dissipation of the principal, where such sums are held in perpetuity for the benefit of charities and, in the orderly course of management of investments, bonds are held until the maturity date. The constant payment of premiums on bonds out of principal and the liquidation of the same at par would eventually reduce the principal to zero. Moreover, the constant payment of all income without deduction effectually places beyond the power of a fiduciary the ability to recoup the loss.

No decision has been called to our attention, nor have we after an exhaustive search been able to find one, in which this question of premiums has been considered, where, as here, the trust is in perpetuity for charities. All the authorities are in accord that where the interest of the testator is manifest it governs upon the question whether the premium paid for bonds shall be paid out of income or borne by the remainder estate: 4 A. L. R. 1249; 4 Bogert on Trusts and Trustees, sec. 831; 2 Perry on Trusts and Trustees (7th ed.), sec. 548; A. L. I. Restatement of Trusts, sec. 239 (f).

The testator does not specifically indicate where the charge for premiums paid on bonds shall fall. What can fairly be deduced from a reading of the will is that the principal shall be held intact, for in no other way can the purpose of the trust be carried on in perpetuity. The

pertinent portion of the will, dealing with the residuary estate, provides:

"Eleventh: After compliance with the above provisions of this my Will, and after the death of my wife, I direct that the net income of the remainder of my estate shall be expended, paid and distributed as follows:

"A. In order to further provide for and protect the various charitable bequests herein made and to provide for the contingency of losses in investments made for the benefit of such bequests, I direct that one-fourth of the net income of such remainder shall be accumulated and added to the principal of such remainder.

"B. One-fourth thereof shall be paid annually and perpetually into the Treasury of the City of Allentown, to be used by the City for the improvements, extension and maintenance of all of its Parks; such payment shall be in addition to what I have heretofore provided for Springwood Park.

"C. The remaining one-half of said income shall be used and distributed annually and perpetually, by my Trustees, for such charitable organizations and objects as in their discretion shall be of the most benefit to humanity, limiting them, however, as to locality, to the City of Allentown and the County of Lehigh . . ."

It is on clause A that the City of Allentown predicates its argument that the premium paid on bonds should not be amortized. By setting up this sinking fund it contends that the testator meant that all receipts from investments, irrespective of premiums paid, should be accounted "income." Considering the entire will, its purposes and objects, we cannot adopt this theory, for, as already pointed out, this could lead to dissipation of the entire fund, and the frustration of the testator's whole plan. The beneficiaries are entitled to the "income" of the trust fund. We think it may safely be said that investors treat coupons on premium bonds as part income and part return of capital. Cullen, C. J., in In re Stevens

et al., 187 N. Y. 471, 476, 80 N. E. 358, 12 L. R. A. (N. S.) 814, stated the point in this wise:

"The income on a bond having a term of years to run and purchased at a premium is not the sum paid annually on its interest coupons. The interest on a $1,000 ten-year five percent bond, bought at 120%, is not fifty dollars, but a part thereof only, and the remainder is a return of the principal. All large investors in bonds, such as banks, trust companies and insurance companies, purchase bonds on the basis of the interest the bonds actually return, not the amount they nominally return." See also New England Trust Co., Trustee, v. Eaton, 140 Mass. 532.

Income is the net yield of a premium bond, not the coupon received. In this view of the matter it cannot be asserted that the premium paid must represent a loss of principal, for no investor, let alone a trustee, would purchase a loss. Thus, if $120 is paid for $100 bond, and the promised $100 is received for it at maturity, it is not that there has been a loss of $20, in consequence of which the trust fund must stand reduced,—it is that the coupons which have been paid from year to year have constituted not only interest, but the repayment of what was taken out of the fund to pay the premium. If premiums are accounted for in the manner the trustees are here doing the fund will remain intact, and the charitable bequests will be "provided for" and "protected," which is the stated purpose of the testator.

The amount paid in the way of premiums on a bond does not constitute a loss on investment. The premium paid represents an advance from capital which must be restored if the principal is to be maintained intact: New England Trust Co., Trustee, v. Eaton, supra; 4 Bogert on Trusts and Trustees, and cases cited, p. 2431.

A companion problem to the premium on bonds is the discount question. Whether the increment on bonds bought at a discount should be regarded as income and go to the

life tenant, or whether it should be added to principal, has been the subject of much debate among textbook and able legal writers. The question however, has always been considered on the premise of an ordinary life estate followed by a remainder. It was always a question of doing equity between the life tenant and the remainder-man. Their positions were antagonistic. Here, on the other hand, we think the prime question is how best to preserve the principal intact and at the same time pay to the charities annually all that the testator contemplated as income.

The position of the City of Allentown and the charities with relation to the principal is not antagonistic. All agree that the first consideration is preservation of the fund. That being so, discounts as well as premiums should then be prevented from changing the size of the trust fund. It is logical and consistent that if the charities are to give up a portion of each coupon in order to keep capital intact when the bond is bought at a premium, they should receive the benefit of the discount, when realized, in order to obtain the rate of interest or income to which they are entitled under the will.

Bearing on the general subject, Mr. Edgerton, in his very able article, Premiums and Discounts in Trust Accounts, 31 Harvard Law Rev. 447, 462, said:

"When a given proper investment has been made, the life tenant is entitled, not to a small, moderate or large income from the investment, but to the income which it happens to bring in. Payments should be made out of the coupon into principal to amortize a premium, not because the coupon is too large for the life tenant's good, but because it is not all income. Similarly, the amount of a discount, if it is realized, should be paid to the life tenant in addition to his coupon, not on any theory that the coupon is small, but because, however large it is, it is not the whole of the income."

See also 4 Bogert on Trusts and Trustees, sec. 830. At page 2429, Professor Bogert says:

"On principle the discount should be paid to the life cestui only when it actually materializes. It is not income until it is paid by a purchaser of the bond from the trustee, or by the obligor to the trustee. Income on trust investments which proves to be uncollectible is not usually paid to the life cestui out of trust capital. The life tenant has the risk of loss as to trust income and the remainderman as to trust capital."

See also 2 Perry on Trustes and Trustees (7th ed.) sec. 548($b$), wherein the decision in In re Gartenlaub, 198 Cal. 204, 244 Pac. 348, is criticized. The court there amortized premiums but refused to award the profit on a bond bought at discount to the life tenant.

Finally, turning to the A. L. I. Restatement of Trusts, sec. 239 ($f$), dealing with the question of bonds purchased at a premium, it is stated:

". . . [the trustee] can properly retain so much of the income as is necessary to amortize on the maturity of the bonds the amount of the premiums paid by him. . . . If, however, he happens to purchase a few bonds at a small premium, particularly if he also purchases other bonds at a discount, he does not necessarily violate his duty of impartiality by failing to make provision for amortization."

The Restatement stresses the point of impartiality in dealing with the life tenant and the remainderman, and inferentially indicates that the particular facts of each case must be considered in deciding whether the trustee should or should not have amortized.

Section 240, comment ($h$), has to do with "Bonds acquired at a discount". Here again the Restatement stresses impartiality. It states that in any event the trustee cannot pay the appreciation as income until realized.

"If, however, the trustee has purchased some bonds at a premium and others at a discount, in determining whether he should make provision for amortizing the premiums he can properly take into consideration the fact that he has purchased other bonds at a discount, even though the amounts of the premiums and discounts are not exactly the same".

The authors of the Restatement clearly recognized that the two questions are intertwined, and seemingly, if amortization is employed with premiums, the accretion in the discount phase should be used to balance the equity between the life tenant and the remainderman.

What has been said by our Supreme Court in Penn-Gaskell's Estate (No. 2), supra, may be repeated here:

"No rule on this subject can be stated that in all cases will produce an equitable result."

Giving consideration to the peculiar factors in this case, we believe the intent of the testator can best be carried out by amortizing the premiums, and giving to income accretions realized on bonds purchased at a discount. The income is to receive accretions only when actually realized by the trustees. By doing this the fund can be held intact over the years. (The testator himself has provided for the contingency of losses by setting aside one fourth of the net income, and this seems ample for the purpose.)

At the present time high grade bonds of small yield command a premium; income in periods like this is necessarily small, but if we can judge the future by the past, there must needs come a time when even high grade bonds of small yield will sell at a discount. Witness the case of the United States Liberty Bonds in the early '20s, when they sold as low as $86. Under such conditions the income would benefit. It is our considered judgment that the fund and its beneficiaries will best be served over the years by amortizing premiums and giving to income the benefit of accretions on bonds purchased at a discount.

And now, April 13, 1938, the account is confirmed nisi. The trustees will be governed by what has been said in the body of this adjudication. In the absence of exceptions filed within 10 days herefrom, such confirmation shall become absolute, as of course.