## Grenawalt's Appeal.

*Sale of Real Estate, under the Act of 1853.—Form of Bond required by the Act.*

1. The Orphans' Court have jurisdiction, under the Act of the 18th of April 1853, to decree the sale of real estate, devised to one in fee, in part or in whole, if found to be subject to the lien of debts not of record, or that repairs and improvements requiring a sale of a part, for the relief and benefit of the residue, are necessary, although the realty be subject to an executory devise in favour of another.

2. The object of the statute is, that whenever a sale of real estate is required, whereon are limited contingent interests, by way of remainder or executory devise, the proceeds, after necessary deductions for expenses, and the objects for which the sale was made, may be substituted for the realty, and there is nothing therein contrary to natural justice or constitutional right.

3. A bond given in conformity with the provisions of the statute, after the order has been made, but before it has issued, and before the sale has taken place, is valid.

APPEAL from the decree of the Orphans' Court of *Lebanon county*, directing the sale of certain real estate, late the property of Leonard Grenawalt, deceased.

By the last will and testament of Leonard Grenawalt, deceased, he (*inter alia*) devised his three houses and a part of a lot in Lebanon, to his son Samuel, in fee, subject to the right of his daughter Maria, to "use, occupy and enjoy, and receive the rents, issues, and profits, of one of the houses and part of the lot (describing it) for life; also subject to the payment to her, annually, of $60, with good and sufficient boarding, free of charge:" adding, that if she could not live comfortably and peaceably with Samuel, he should pay her boarding with her sister or brother, or their children.

The will provided further, that if Samuel's only son, Calvin, should survive his father, and die without issue, then the estate devised to Samuel, was to descend to the testator's children, Josiah Grenawalt and Sarah Fichthorn, subject to the same reservation for Maria; and if Samuel should leave a widow surviving Calvin, then subject to an estate for life in her, and the rights of Maria, as above stated; but if Samuel should have other children, then absolutely to them, subject to the reservation for Maria.

The testator also bequeathed to his daughter Sarah, $1050, to be paid by any "balance in the hands of his executors, out of the proceeds of real and personal estate herein directed to be sold, after expenses and debts are paid," the deficiency to be made up by his two sons, Josiah and Samuel.

[Grenawalt's Appeal.]

He then, in express terms, gave to Maria the matters reserved in the devise to Samuel.

Samuel and Josiah were named as executors, and filed separate accounts, which were not finally adjusted when this proceeding was commenced.

On the 7th of November 1859, Samuel Grenawalt presented his petition to the Orphans' Court, reciting the devises and legacies above mentioned. He averred that there was due to the heirs of Sarah Fichthorn, $275, and to the heirs of John Grenawalt, $25, and that there were claims against the property for curbing, &c., for about $300; that the property was out of repair and unproductive; and that the interest of all concerned, required that the whole or part of it should be sold to pay the debts, and make the necessary repairs : and praying for an order to sell a portion (describing it) for this purpose.

This petition was answered by Maria and Josiah, who opposed the application, averring that the indebtedness was not fairly stated, that part was barred by the Statute of Limitations, and the rent overrated; and objecting to any interference with the life estate of Maria, and to a sale of property burdened with a life estate : whereupon an auditor was appointed to examine into the expediency and necessity of the sale as prayed for.

The auditor made a report in favour of awarding the order of sale. This was followed by the written assent of M. Fichthorn—the devisee of Sarah Fichthorn, of Maria Grenawalt, and of Calvin Grenawalt; leaving Joseph Grenawalt as the only opposing party.

On the 10th of January 1860, the order of sale was awarded; and afterwards, but before the order issued, a bond with sureties approved by the court, was given by Samuel for the proper distribution of the proceeds of sale.

This appeal was then taken by Josiah Grenawalt, who assigned, for error, the following matters, to wit :—

1. The court erred in awarding an order of sale, as prayed for by the petitioner.

2. In not requiring a proper bond to be filed before the order of the sale issued.

3. In not protecting, by the terms of the order, the interests of the tenant for life and of the reversioners.

*John Weidman*, for appellant.—1. The portion proposed to be sold by the petitioner, is that which was devised to Maria for life. This the court cannot authorize under the Act of 18th of April 1853; no such power is conferred by it. If *sui juris*, she might convey; if not, her rights must remain until disposed of by her committee, under the supervision of the Common Pleas.

[Grenawalt's Appeal.]

Her consent here makes no difference: it is a question of jurisdiction.

2. The statute enacts that "no sales shall be ordered or made until security, &c., be *given*." The giving of the bond is preliminary to the order. In this case it followed the order.

3. The 6th section of the Act of 1853, makes it incumbent on the court to protect vested, contingent, and executory remainders by the terms of the bond, which was not done in this case. Citing the Act of Assembly; Bombaugh *v.* Cleppinger, 7 W. & S. 311; Rogers *v.* Smith, 4 Barr 93; and Erwin's Appeal, 4 Harris 256.

*Levi Kline* and *Josiah Funk*, for appellee.—In support of this order there is the report of the auditor appointed to examine the matter, and the concurrence of all the other parties in interest.

The claims against the property must be paid, or there will be a forced sale. The property must be repaired, or it will decay.

The interest of the appellee is against the sale; for his life estate is now by yearly payments equal to $190, while the annual rental is not worth more than $150, so that he is losing by his desire to preserve this estate for those in remainder and reversion.

The Act of Assembly of April 18th 1853, was made to meet such cases as this.

The bond was given before the order issued, and it requires the "net proceeds to be paid over agreeably to the order and decree of said court, and according to the Act of Assembly in such cases made and provided." The court can direct, under this, an investment of the balance in hand, if there be any.

The opinion of the court was delivered, October 3d 1860, by

Thompson, J.—The main question discussed in the argument presented in this case, was as to the power of the court to order a sale of the property for the purposes set forth in the petition, owing to the peculiarity of the interests involved. This is a question of jurisdiction under the Act of 18th April 1853. The error assigned, however, is general, and covers all valid grounds of exception to the decree.

The Act of 1853 has great scope; all of its provisions have, perhaps, not yet been called into active exercise, and may not be for some time to come; and hence it is prudent that no more be said in each case that may arise than may be necessary to determine whether it be within its provisions or not.

There seems to be, however, clear authority in the act to sell real estate by order of the Orphans' Court, whenever "the dece-

dent's real estate is subject to the lien of debts not of record:"
Sec. 2.    This was not new, for the same thing might be done
under the Acts of 1832 and 1834, relating to such estates.    By
the sixth section of the Act of 1853, money raised by such sale,
not in any other way provided for in the act, shall not be " ex-
pended for any other purpose than for the payment of liens upon,
or the improvement of the same real estate when mortgaged, or
other real estate when held for the same uses and persons, unless
when required for the maintenance or education of parties having
the like interest, vested or expectant," &c.    The petition for the
sale here is by the executor and principal devisee in interest in
the property.    He sets forth the interest of all concerned, and
prays a sale for the payment of a legacy, for the discharge of
debts against the estate, and for the purposes of repair and
improvement.

Two parties interested in the property proposed to be sold
objected, and answered that the legacy was not a charge on the
realty—that the debts were over stated—that one, and the
principal one, was barred by the statute of limitations—that the
claim for paving the cartway was greatly exaggerated and not
due.

There was a hearing before an auditor, after notice, and he
reported in favour of the sale.    No exceptions were filed to his
report, although I think there was abundant room for objection
so far as the legacy was concerned.    It seems to us that it was
not a charge against the realty.    It was simply a personal charge
by virtue of the acceptance of the devise, and the remedy was by
action against Samuel Grenawalt, the devisee : Brandt's Appeal,
8 Watts 198 ; Dewitt *v.* Eldred, 4 W. & S. 414 ; Miltenberger *v.*
Schlegel, 7 Barr 241 ; Hackadorn's Appeal, 1 Jones 86.    The
legacy out of the question, a different conclusion might have
been arrived at by the auditor and afterwards by the court.

But taking it as presented in the auditor's report, that there
were existing claims against the estate for debts "not liens of
record," and that repairs and improvements were needed to
other parts of the estate, held for the "same uses and persons,"
which required the raising of money by a sale of a portion of it
for the relief and benefit of the residue (for this is the essence of
the report), what ground is there to question the power of the
court to order a sale ?    It certainly may be done for the payment
of debts : so also by a fair interpretation of the act may it be
done for improvement and repairs ; for the act provides that
money raised shall not be expended except for the payment " of
liens, or improvement of the real estate mortgaged, or other real
estate, when held for the same uses and persons."    If it may be
so applied, it may be raised for the purpose of such application.

The court have jurisdiction, therefore, to order a sale for some

of the purposes, at least, in the petition. Was there anything in the nature of the interests in the property which forbade the order? It was certainly an object of the statute, which I think clearly appears, that whenever a sale is required of real estate on which are limited contingent interests by way of remainder or executory devise, to sell the entire estate out and out, and substitute the proceeds for the realty, after the necessary deductions for expenses and the means applicable to the objects calling for the sale. This would produce clear titles to the land, and give effect to the limitations on the fund. In fact, it is a method of clarifying, if I may use the term, titles otherwise clouded with contingent interests.

To return to the interests proposed to be sold here :—The main objection is, that it divests a life estate in Maria Grenawalt in a part of the premises. I do not discuss the right to do this—it is an abstraction in the case : for Maria has withdrawn her objection to the sale, and assents to and requests it. The court having jurisdiction to decree a sale of realty descended or devised, for the purposes proposed, their decree would not be void, and the assent of Maria would for ever estop her and her heirs from avoiding the sale in the hands of a *bonâ fide* purchaser. Until the contrary be shown we must treat her as *sui juris*, and give effect to this presumption as in any other case. Samuel Grenawalt is the devisee in fee of the premises, subject to the life estate in Maria, and he is the petitioner and prays for the sale. Calvin, the son, is of age, and if he may be regarded as contingently interested, he also assents. The objector is Josiah Grenawalt. As already remarked, the fee was devised by very sufficient terms to pass it to "Samuel Grenawalt," and "to his heirs and assigns." The limitations over to Josiah, in the event of the death of Calvin, the son of Samuel, without issue, could only have effect by way of executory devise. It could not exist as a remainder, for the entire estate passed to Samuel, subject to the life estate of Maria, and there could be no remainder in an entirety. Such interests as this, by express terms of the act, may be sold. Estates whereon are limited "contingent remainders or executory devises," are subject to sale. The compensation in the act for the conversion is the substitution of the fund to the same uses and persons as was the land. So this interest is not in the way.

The objection that all the parties interested immediately or remotely are *sui juris*, and are not to have their interests divested without their consent, hinted at in the argument, has also been considered. The Act of 1853 is a general law, operating on all cases alike—is intended as a rule of property, and is unlike the case of Erwin's Appeal, 4 Harris 256, which exposed a legislative attempt to make a rule in a special case after rights had become vested under existing laws. I think it was well decided

[Grenawalt's Appeal.]

that such a divestiture of title was not by " due process of law." Here, however, the property in question became vested under a rule of law promulgated in the statute, by which it and property similarly situated might be divested, and there is nothing, contrary either to natural justice or to constitutional right, to allow the act so to operate, where the fund is substituted for the estate, or so much as may remain after the necessary application to the relief of the estate, or the benefit of those interested in other portions of it. It unfetters the realty from diversity of titles and contingent interests, secures to the purchasers clear titles, and to parties interested the value of their interests. This objection is not in the way of the order of sale.

We think the bond executed and filed in this case was in form and in terms sufficient. The statute empowers and enjoins the court to require of the party to execute the decree, adequate security to guarantee a faithful performance of it. It is not indispensable that it should precede the decree. In fact, it might be difficult sometimes to give a sufficient bond prior to the order of court designating the party to execute the decree; but, be this as it may, there was a bond approved and filed in this case.

The decree of the Orphans' Court is affirmed at the costs of the appellant.