## Application of The John C. Mercer Home for Disabled Clergymen of the Presbyterian Faith.

## Fisher's Appeal.

*Will—Charity—Real estate—Alienability—Visitorial powers—Act, 1853.*

A testatrix devised a farm of 185 acres, called "The Mount," with all the personal property thereon, for a home for disabled clergymen, to be incorporated and thereat established, and gave $100,000 to provide some means for its support. She further directed "that no part of the said estate and property called 'The Mount,' and devised as aforesaid, shall be sold or disposed of, incumbered or applied to any other use or purpose than as a home for disabled clergymen of the Presbyterian faith as above specified." On an application by the trustees to sell a small portion of the farm remote from the buildings occupied as the home, *Held:*

(1) That nothing short of a plain, unequivocal direction that no part of the land shall be parted with for any purpose whatever, ought to be held sufficient to restrain the managers from doing that which the interests of the charity under their control require of them.

(2) That the intention of the testatrix was to forbid the diversion of any part of her gift to other purposes than those to which she had devoted it, which intention might be best followed by allowing a sale.

(3) That the testatrix having created no remainder or reversion, the charity took an estate in fee simple and the managers were answerable to the commonwealth only, and to her they might apply for direction if in doubt about their powers and duties; which direction, formerly given by special statute, is now given through the orphans' court, under the Price act; and that the consent to the sale of that court was the consent of the sovereign, in the exercise of visitorial powers, and enabled the managers to make a good title to the land.

Argued Feb. 1, 1894. Appeal, No. 203, by S. Wilson Fisher, a purchaser of real estate, from decree of O. C. Montgomery Co., June T., 1893, No. 7, authorizing applicant to sell certain real estate at private sale. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Petition of charitable corporation for leave to sell real estate at private sale, under the Price act.

The petition set out the following devise by Ann Jane Mercer in her last will and testament:

"Whereas I am seized and possessed of a certain estate and property called 'The Mount,' situate in the county of Mont-

gomery in the state of Pennsylvania, which I desire to devote
to pious and charitable uses—Now I do hereby give devise and
bequeath all my said estate and property, called ' The Mount,'
situate in the said county of Montgomery in the state of Penn-
sylvania, together with all the buildings and improvements
thereon erected with any surrounding or adjacent property ac-
quired by my husband or myself forming part of the said estate
called ' The Mount.' Together with all the horses carriages
farming utensils furniture goods beds and bedding, and all other
personal property on the premises at the time of my decease
which belong to me—to my brother John Hamilton Junior of
Bucks county in the state of Pennsylvania attorney at law his
heirs, Executors Administrators and Assigns in Trust as soon as
possible after my decease to cause and procure a charter of in-
corporation to be granted either by the Legislature or by the
proper court, for an institution or home to be called ' The John
C. Mercer Home for Disabled Clergymen of the Presbyterian
Faith' to be established at the said estate and property called
'The Mount' which charter shall provide that the said insti-
tution or home shall be for the support and maintenance of
selected clergymen of the Presbyterian faith who are decayed
by age or disabled by infirmity and who do not use tobacco in
any shape or form and who in all things shall comply with the
laws and regulations of the said home otherwise to be subject
to be discharged by the board of managers of said home whose
decision shall be final. That the number of inmates in the home
or institution shall never exceed its annual nett rent and reve-
nue, and shall not exceed twelve in number. That the board
of managers alone are directed to admit into the home or insti-
tution any clergyman of the Presbyterian faith decayed by age
or disabled by infirmity who do not use tobacco in any shape
or form and to discharge them whenever it becomes necessary
or expedient whose decision shall be final—

" That no part of the said estate and property called '.The
Mount' and devised as aforesaid shall be sold or disposed of
encumbered or applied to any other use or purpose than as
a home for disabled clergymen of the Presbyterian faith as
above specified. And I furthur will and direct that as soon as
the said charter shall have been obtained and recorded my said
trustee shall grant assure and convey all the said ground with

the buildings and improvements thereon erected, and all the personal property on the said premises belonging to me to the said 'The John C. Mercer Home for Disabled Clergymen of the Presbyterian Faith' their successors and assigns to be used and occupied solely for a home or an institution for disabled clergymen of the Presbyterian faith. And in order to provide some means for the support and maintenance of the said home or institution, I do give and bequeath unto the said institution, as soon as the same is incorporated, the sum of one hundred thousand dollars in trust to keep the same invested in loans or debts of the United States or of the state of Pennsylvania or in bonds or mortgages of real estate within this state free from all previous incumbrances or in well secured ground rents and to collect and receive the rents, interest and income thereof and to pay and apply the same to the current expenses of said home."

The petition further set out the incorporation of the petitioner, June 21, 1886, conveyances to it of "The Mount" by John Hamilton, Jr., trustee, executor, etc.; that this real estate was originally purchased by eight conveyances, and contained about 185 acres "which is more than is necessary for the uses and purposes for which said home was established;" that appellant had agreed to purchase 26¾ acres, which it was to the interest and advantage of those interested to sell.

Appellant filed an answer, admitting his contract to purchase but alleging that, under the will, no part of said premises could be sold.

The petition was referred to an auditor, Montgomery Evans, Esq., who reported that appellant would take a good title, and the court below decreed a conveyance, in an opinion by SWARTZ, P. J.

*Errors assigned* were (1) want of jurisdiction; (2) confirmation of auditor's report; (3) decree.

*Geo. W. Rogers*, for appellant.—This home is a private corporation founded by a benefaction for charity, and the will constitutes a contract between the donor, the trustees and the state : Dartmouth College v. Woodward, 4 Wheat. 643. This contract renders the real estate inalienable : Perin v. Carey, 24 How. 495; Phila. v. Girard's Heirs, 45 Pa. 9; Yard's Ap., 64 Pa. 95.

While this is not a question of forfeiture, if it were, the sale would be a misuser and work a forfeiture : Pickle v. McKissick, 16 Pa. 148; s. c., 21 Pa. 235. This being the case of a charity, the land is inalienable.

The Price act of 1853, under which power to decree the sale is claimed, expressly requires that a sale under it must be one that can be made " without injury or prejudice to any charity " and " without the violation of any law which may confer an immunity or exemption from sale or alienation; " Burton's Ap., 57 Pa. 220 ; Price on Real Est., pp. 67–70, etc. This principle is recognized in the acts of April 26, 1855, § 10, P. L. 331, and 1889, P. L. 173.

*Peter Boyd, B. P. Chain* with him, for appellee.—The home took an estate in fee under the will : 8 A. & E. Ency., p. 900 ; 1 Sharswood's Bl., p. 510.

Construing the will as a whole it is not meant that the land shall be inalienable. The surrounding circumstances may be taken into consideration : Postlethwaite's Ap., 68 Pa. 477 ; Pennsylvania law favors alienability : Griffitts v. Cope, 17 Pa. 96 ; Burton's Ap., 57 Pa. 213.

Even if testatrix expressly imposed the restriction of inalienability, yet a sale may be decreed if for the best interests of the charity. There is no condition of forfeiture annexed to the devise, as in Pickle v. McKissick, 21 Pa. 232 ; nor would a sale affect vested rights of parties sui juris against their consent, as in Ervine's Ap., 16 Pa. 256 ; nor is there any inalienability imposed by statute for a valuable consideration, as in Vidal v. Girard, 2 How. 127 ; Price on Real Est., pp. 68, 69. A restriction against alienability annexed to this devise, even if expressly stated, would therefore be considered, not as a condition, but as a direction as to the management of the trust, which could be set aside by a court of equity or act of the legislature : Barr v. Weld, 24 Pa. 84; Sohier v. Trinity Church, 109 Mass. 1 ; Stanley v. Colt, 72 U. S. 119 ; Price on Real Est., pp. 12, 13.

The Price act authorized the decree of sale : Price on Real Est., 59, 68 ; Burton's Ap., 57 Pa. 213, 219, 220.

The question as to the sale of lands devised is not raised in Perin v. Carey and other cases cited by appellant. They simply rule that a devise to a charity does not create a perpetuity.

OPINION BY MR. JUSTICE WILLIAMS, July 11, 1894:

The corporation known as the John C. Mercer Home for Disabled Clergymen, was organized under the directions of the last will and testament of Ann Jane Mercer, deceased. Its purpose is to provide for a limited number of disabled clergymen of the Presbyterian church the comforts of a home; and so to save them from the discomforts and degradation of the almshouse, or the destitution and suffering that must come to helpless old age when dependent upon unorganized and voluntary charity. The corporation was founded and endowed under the will of Mrs. Mercer, and is dependent upon the income arising from the farm, and the money given to it by her, for the ability to carry forward its benevolent work. It received from her, among other things, the land now owned and occupied by it. This body of land was described by her in her will as "The Mount." It contained about 185 acres, with farm houses, barns, and other buildings upon it. It had been purchased at different times and from different persons, but the several parcels adjoined each other, and constitute a connected if not a conveniently compact body of land. Two of these parcels containing together twenty-six and three fourths acres, are separated from the remainder of the land by a public highway, are at an inconvenient distance from the building occupied as "The Home," and are incapable of producing an income corresponding in any degree to their value without the expenditure of a considerable sum in improvements and repairs. The trustees have an opportunity to sell this practically useless and detached piece of land for seven thousand five hundred dollars. The appellant is the prospective purchaser, and the purpose of this appeal is to determine whether the trustees can make him a good title to the land, under the provisions of Mrs. Mercer's will. The doubt about their power is raised by the clause in the will which follows the devise of the land, and is in these words: "No part of the said estate and property called 'The Mount,' devised as aforesaid, shall be sold or disposed of, encumbered or applied to any other use or purpose than as a home for disabled clergymen of the Presbyterian faith as above specified." The trustees of the home desired to sell to Mr. Fisher, and in their petition to the orphans' court they set forth the reasons which influenced them. They represented that this

part of the property was inconveniently situated, was in bad repair, was practically unproductive, and was charged with taxes which they had annually to pay. They further represented that the price offered was a full and fair one, that the income to be derived from the price would "far exceed the income to be derived from the land," and that the sale at the price offered would be for the best interest of the corporation and its beneficiaries. This is a case therefore in which leave to sell should be given unless the terms of the will interpose an insurmountable obstacle.

If we look at the several provisions of the will that relate to this charity, we shall be able to gather the purpose of the direction we have quoted, and the meaning of the testatrix. She recites, by way of preface to the devise under consideration, her ownership of "the estate and property," known as "The Mount," and her desire to devote it to pious and charitable uses. She then fixes upon a particular charitable use, namely, the support of disabled clergymen of the Presbyterian church; directs her executor to secure the incorporation of the charity under the name of the John C. Mercer Home, and devises the property known as "The Mount," with all the horses, carriages, farming utensils, household furniture and other personal property upon it, in trust for the home. In order to provide some means for the support of the institution, apart from the income to be derived from the property, she gave the sum of one hundred thousand dollars to be invested in interest-paying securities, and directed that the income therefrom should be applied to the payment of the current expenses of the home. Having thus provided a place for the care of the objects of her solicitude, and a permanent investment, to provide to some extent for their support, she seeks to secure the perpetuity of the charity she had organized by the clause relied on by the appellant, and directs that the property shall never be devoted to any other purpose than that to which she has devoted it.

The management of the property and of the institution to which it is given is confided to trustees or managers whose duty it is to make the best use of the property that is practicable for the support and success of the charity to which it is devoted. A piece of the land that is remote from the building occupied as the home, is seen by the managers to be of little

practical value. A price is offered for it that will produce
more income than is possible to get from the land itself. The
expenses will be reduced by the sale, and income increased.
The managers, in the exercise of their best judgment, reached
the conclusion that the interests of the charity, and the inten·
tions of the testator will be best served by the sale of this
piece of land, but they are in doubt as to their powers in the
premises.

Now in this state the visitor of all charitable institutions is
the state herself. The testatrix created no remainder or rever-
sion after the charitable use, but she gave the property abso-
lutely to the corporation for the purposes of charity. The title
of the devisee is in fee simple. The heirs of Mrs. Mercer have
no interest, direct or remote, in the property. The managers
are answerable for their conduct not to the testatrix or her
heirs but to the commonwealth; and if in doubt about their
powers or duties, they may apply to the commonwealth for
direction.

This direction was formerly given by a special act of assem-
bly in each particular case. It is now given under the provi-
sions of the Price act, through the orphans' court of the proper
county: Burton's Appeal, 57 Pa. 213. The question presented
is, how shall this partially detached piece of land be best used
to promote the interests of the home? The managers are of
the opinion that it is by the conversion of it into money and
the investment of the proceeds as part of the permanent endow-
ment fund; but they submit the question to their superior and
visitor, the state. The state, through the orphans' court, concurs
in opinion with the managers and makes a decree authorizing
the sale. We have thus the action of the holders of the freehold,
and the approval of that action by the only power possessed of
supervisory control, the state. Against this action nothing is
urged except a very literal interpretation of a direction in Mrs.
Mercer's will, which was intended not to cripple or embarrass,
but to preserve and perpetuate the charity. What she forbade
was the diversion of any part of her gift to other purposes than
those to which she had devoted it. The managers were for-
bidden to sell, incumber, or apply, in any manner, any part of
the property to any other use than that of " The John C. Mer-
cer Home for Disabled Clergymen of the Presbyterian Faith."

She did not deprive them of all discretion in the management of the property, but of power to weaken or defeat the charity by turning the property to other uses. It may happen, as was well said by Justice AGNEW, that "a sale is frequently the best mode of executing the trust," as to part of the property, and sometimes as to the whole of it. Whether such sale be authorized by a special law, as in Stanley v. Colt, 72 U. S. 119, or under the decree of the orphans' court made in pursuance of a general law upon the subject, is immaterial. It is the consent of the sovereign, in the exercise of visitorial powers, in either case, and such consent enables the managers to make a good title to the piece of land which they desire to sell. Nothing short of a plain unequivocal direction that no part of the land shall be parted with for any purpose whatever, ought to be held sufficient to restrain the managers from doing that which the interests of the charity under their control require of them.

The judgment is affirmed.