## Penn-Gaskell's Estate (No. 2).

*Appeals—Assignments of error—Failure to print testimony.*

The Supreme Court will not consider assignments of error to findings of fact by an auditor, where the testimony relating to such findings has not been printed.

*Trust and trustees—Sale under Price Act—Distribution of proceeds—Will.*

Where a testatrix devises a farm to a trustee for the life of her nephew with remainder to his children, and directs that the nephew shall have the right to occupy the farm and buildings "so long as he should continue to cultivate the same according to the rules of good husbandry, and keep the place in good order and repair," and the land is subsequently sold under the Price Act, the children of the nephew are not entitled to have the proceeds of the sale distributed directly to themselves. In such a case the trustee must invest the proceeds and pay the income to the life tenant.

*Trust and trustees—Life tenant and remainderman—Principal and income —Premiums on investments.*

Premiums paid by a trustee on investments are to be charged to principal and not to income.

Argued Feb. 8, 1894. Appeal, No. 184, Jan. T., 1904, by Peter Penn-Gaskell Hall, from decree of O. C. Delaware Co., dismissing exceptions to auditor's report in estate of Eliza Penn-Gaskell, deceased. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and THOMPSON, JJ. Affirmed.

Exceptions to report of Frank B. Rhodes, Esq., auditor. The opinion of the Supreme Court states the case.

*Error assigned* was in dismissing exception to auditor's report.

*Henry J. Hancock*, of *Hancock, Lewis & Buckley*, and *V. Gilpin Robinson*, for appellant.

*John G. Johnson*, for appellee.

*A. T. Freedley*, with him *William Brooke Rawle*, for Peter Penn-Gaskell Hall, life tenant.

OPINION BY MR. JUSTICE FELL, March 7, 1904:

There is no merit in any of the numerous assignments of error. Many of them are to findings of fact by the auditor

from testimony that has not been printed. These findings cannot be reviewed. Others relate to the refusal of the court to surcharge the accountant with money expended in improving the real estate, under an order of the orphans' court obtained on petition by all parties in interest. These need not be considered.

The substance of the thirteenth and fourteenth assignments is that the court erred in not awarding the proceeds of the sale of the farm directly to the children of the life tenant. By the will of the testatrix her nephew was given the right to occupy the farm, mansion, and farm buildings, "so long as he should continue to cultivate the same according to the rules of good husbandry and keep the place in good order and repair," etc. The auditor has found that all these conditions were performed until the sale of the farm under the Price Act. The life tenant did not lose his estate by the conversion. The sale was made in the interest of all the parties and could have been made against his protest. The proceeds of the sale were received by the trustee in lieu of the land and upon the same trust, for him for life with remainder to his children who should then be living. The act expressly provides that the purchase money shall be in all respects "a substitute for the real estate sold, mortgaged or let, as regards the enjoyment and ownership thereof, after the payment of the liens, and shall be held for or applied to the use and benefit of the same persons and for the same estates and interest, present or future, vested, contingent, or executory, as the real estate sold, mortgaged or let had been held."

The sixth assignment of error to the refusal of the court to surcharge the trustee with loss sustained by the payment of premiums on municipal and other bonds purchased, has nothing on which to rest because there was no evidence that any loss had been sustained. It has been argued on the ground that premiums paid for investments should be charged to the life tenant generally, and that in this case the direction contained in the will that all taxes, charges and assessments on the real estate should be paid by the life tenant indicated an intent that the life estate should bear the burden of preserving the estate in remainder without diminution. There is nothing that takes the case out of the general rule.

We have not before been called on to determine whether premiums paid by a trustee for investments should be charged to the life tenant or to the remainderman. No rule on this subject can be stated that in all cases will produce an equitable result. If the whole premium is at once charged to income or if a part of the income is withheld each year so that the successive deductions will cover the whole time the security has to run, the life tenant, who is the primary and immediate object of the testator's bounty, will be deprived of the income provided. In one case he may be wholly deprived of the means of support for a considerable period, and receive no benefit whatever from the provision made for him ; in the other, he will suffer a diminution of what is really income, it may be for the whole period of the trust. On the death of the life tenant before there has been a depreciation in the value of the security purchased, the remainderman will be enriched by the amount of the premium paid from the income of the estate. The injustice of this to the life tenant is manifest. On the other hand, as the securities mature the premiums will decrease and in the end they will be lost. If they have been charged to the remainder, the principal of the estate will be impaired. But it is never certain when a purchase of securities is made at a premium that a loss will result to anyone, and if the premium is charged to the life tenant we make absolute as to him what is only contingent as to the remainderman, and we may make the former pay for the increase received by the latter. The remainder has the advantage of any increase resulting. from profits made on investments, and it bears the losses resulting from depreciation in value of ordinary securities. There is no substantial reason why an exception should be made in its favor where losses result from the payment of premiums made in order to obtain safe and permanent investments. If premiums were paid to secure greater income, they should be charged of course to the life tenant, because he could be the only party benefited by the payment. But this is not the case. Securities that command a premium do not bear a proportionally high interest. The rule is otherwise. The better the security, the lower the rate of interest on the investment. Premiums do not represent higher interest but safety and permanency of the investment and facility of transfer and use. These are matters

in which the life tenant has less interest than the remainderman because he has less at stake.   And he pays in part for safety and permanency whenever securities are bought at a price above par.   Since interest is paid only on the face value, the percentage on the money invested in the purchase of a security is decreased whenever a premium is paid, and the income is usually less than the current rate of interest on the amount expended in the purchase.   The remainderman may in the end pay more, but he has a greater interest; and there is a chance that he may lose nothing, because he may come into possession of the securities when there has been no depreciation in value, and he has also the chance of a positive gain if there should be increase in value.

That premiums paid on investments are to be charged to principal and not to income was decided by the orphans' court of Philadelphia in Furness's Estate, 12 Phila. 130, nearly thirty years ago and has since been the rule in that court, and as far as we know the rule followed generally in the state.   It was recently approved after careful consideration by the Superior Court in Boyer v. Chauncey, 12 Pa. Superior Ct. 526.   On the whole we think this is the better rule.   It apportions more equitably than any other the charges which each interest in the estate should bear for the preservation of the principal, and it prevents the positive injustice of charging the life tenant for a loss which may never be incurred.   As to the chances of loss or gain it places an investment for which a premium is paid on the same footing as other investments.   This is not unjust to the remainderman whose interest is mainly served in securing the principal, and the cost to him is small, in a properly administered trust.   In the case of mismanagement by the improvident purchase of long term loans at high premiums to avoid care and responsibility on the part of the trustee, the remedy is against him.

The decree is affirmed at the cost of the appellant.