## Rorer's Estate.

*Trusts and trustees—Gift to specific charitable uses—Material change in conditions—Conveyance of property clear of trust.*

1. Where testator creates a valid trust for a specific charitable use, the land so held cannot be conveyed away by the trustee unless the object of the trust has come to an end or conditions have suffered a material change, in which case the court will decree a sale and supervise the application of the proceeds to the same use.

2. By a deed executed in 1833, R. conveyed land to a Baptist congregation and their successors, to have and to hold the same to the only proper use and behoof of the said society and their successors as a place for holding religious meetings and a burial ground, and for no other use forever; provided, however, that should the said society, as a religious body, become extinct, the land should be held in trust by the Central Union Association of Independent Baptist Churches until such time as there should be Baptists again in the neighborhood. Thereafter, under a clause in his will, executed in 1853, other land adjoining and contiguous was conveyed, under the same trust, by his trustees to the congregation's successor. The congregation subsequently closed the church and decided to build another some eight blocks away. The trustees presented a petition for leave to sell a part of the tract, in which no bodies had been interred, for the sum of $3000, with a view to applying the purchase money to the construction of the new building, to cost approximately $100,000. Certain of the relatives of those interred in the burying ground objected, alleging, *inter alia*, that the new church had no burial ground; that in the event of widening one of the streets upon which the land abutted, it would be necessary to use a portion of the strip proposed to be sold for the re-interment of bodies which now rest along the street in question; that a sale of the strip would violate the trust for which the land was granted and devised; and that it was conceivable that the land might be used for some objectionable purpose: *Held*, that the prayer of the petition should be refused.

Exceptions to master's report recommending that a decree be entered under the Revised Price Act of June 7, 1917, P. L. 388, authorizing a conveyance to

the trustees of the Oak Lane Baptist Church, successor of the Union Baptist Church, successor of the Society of Baptists, of land held under the will of David Rorer, deceased. O. C. Phila. Co., Jan. T., 1922, No. 690.

*Harvey Gourley*, for petitioners.

*Philip L. Leidy* and *Thomas Stokes*, contra.

GUMMEY, J., March 29, 1923.—Through the generosity of David Rorer, partly by his deed executed in 1833, and partly by his will dated May 7, 1853, and probated the same year, the "Union Baptist Church, near Milestown," acquired title to two contiguous parcels of land, forming together a triangular tract, situate at the intersection of Cheltenham Avenue and Oak Lane, which meet at an acute angle, forming two sides of the triangle. For seventy years or more this tract has been used as a burial ground, with the exception of a strip running the whole length of the Cheltenham Avenue front, about 342 feet, with a depth of about 45 feet (excluding the land in the bed of the street); and on the easternmost end of this strip there was erected in 1833 a church, in which the congregation of the Union Baptist Church held their religious services until the church was abandoned in 1914. On this same strip, about 100 feet from the westernmost end, there was erected the usual shed for the protection of horses and carriages; from thence westward about 100 feet the strip was not built upon, and this end was part of the land conveyed to the church corporation in pursuance of Rorer's will; the rest of the strip under discussion, on which the shed stood (since torn down) and where the church still stands, together with all of the land in the rear thereof, used for burial purposes, became vested in the church corporation by virtue of Rorer's deed, which, in consideration of the love and affection which he and his wife had for the Society of Baptists, and in consideration of the sum of one dollar, was conveyed by them to said society and their successors (and their successors became the Union Baptist Church, near Milestown), to have and to hold the same (except a lot 8 by 20 feet, reserved by the grantors as a burial lot) "to the only proper use and behoof of the said Society of Baptists and their successors as a place for holding their religious meetings and a burial ground, and for no other use forever, provided, however, should the said Society of Baptists as a religious body become extinct and at all such times for the said lot or piece of land hereby granted, with the appurtenances, hereditaments and premises mentioned or intended so to be held in trust by the Central Union Association of Independent Baptist Churches until such times as there shall be Baptists again in the aforesaid neighborhood."

While David Rorer was still living, the land thus conveyed became vested in the Union Baptist Church, and for the purpose of increasing the size of the church property, David Rorer inserted the following provision in his will:

"It is my desire that at or before the time of sale of my properties my friends shall lay off and give to the Union Baptist Church a portion of ground as follows:

"Beginning at the corner of the shed and measuring down 100 feet or to Sixth Street when said Street shall be opened, provided, however, that if the said Street should run nearer than 100 feet to the line of land so bequeathed to said Church shall extend no further than said Sixth Street. It is also my desire that so soon as possession shall be taken of said land by said Church they shall build a stone wall across the west-end of said lot, also to put a wall along the County Line Road and extend the Wall from the present along School Lane to the western line of said lot, the County Line side of the lot to

3 D. & C.

be occupied as a shedding lot, said lot to be for the further good of the Church and to be laid out into burial lots."

The stone walls were built as directed by the will.

In 1909, some of the members of the Union Baptist Church were granted a charter under the name of "Oak Lane Baptist Church," and thereupon, in 1912, the tract of land under discussion was conveyed by the "Union Baptist Church, near Milestown," to the "Oak Lane Baptist Church," in which deed the Central Union Association of Independent Baptist Churches joined for the purpose of releasing any contingent interest the association might have under Rorer's deed. Previously, in 1910, the Oak Lane Baptist Church had acquired by purchase a piece of land at Twelfth Street and Oak Lane Avenue, where they began the erection of a church and Sunday school; the school building being finished, possession thereof was taken in December, 1914, and thereupon the church on the Rorer tract was abandoned, and it is fast getting into a dilapidated condition, the chimney having been condemned and a portion of the roof having fallen in.

The Oak Lane Baptist Church being thus the record owner of the Rorer tract, a proceeding was brought in Court of Common Pleas No. 3 of Philadelphia County, having for its purpose the sale of the whole tract (the burial ground as well as the church) for the sum of $3000. The proceedings were transferred to Court of Common Pleas No. 1, as of December Term, 1921, No. 4821, and subsequently, on Feb. 8, 1922, Judge Shoemaker, of that court, filed an opinion, in which he said: "We are, therefore, of the opinion that the sale does not meet the proviso of section 1 of the act, for 'when all the facts are considered together, it cannot be denied that the action of the church, if consummated, will take away from the lot owners the very right and title to the property which the church itself has granted them and for which it has been paid. This, it seems to us, is a clear case of prejudicing the rights of persons for whom the charitable trust was created:' Gumbert's Appeal, 110 Pa. 496; Pitcairn v. Homewood Cemetery, 229 Pa. 18." And the court entered judgment for the defendant; that is, in favor of the owners of the burial lots who had raised the objections to the sale.

The present application is for leave to sell the strip along Cheltenham Avenue, about 342 feet front and extending in depth about 45 feet, excluding the land in the bed of the avenue, for the same price, $3000; and if the sale is authorized, it is the purpose of the Trustees of the Oak Lane Baptist Church to apply the purchase money towards the payment of the cost of the new church now in process of erection on Oak Lane Avenue, about eight city squares from the Rorer tract, the cost of its construction, with the furnishings, etc., being approximately $100,000. No portion of the strip which it is now desired to sell has been sold for burial purposes; but the sale is opposed by some of the owners of lots in the balance of the tract, who argue that the burial lot owners are affected by the proposed sale because of the general use to which the premises may be put; that the depth of the strip is such that the rear of any houses built thereon will come close to the burial ground; that it is conceivable that the land might be used for some objectionable purpose, such as garages; that, in order to obtain a small portion of the cost of the new church, the trustees are attempting to sell land which has been held in trust for ninety years, and that the proposed sale will not further the original trust in any particular; that the new church has no burial ground; that, in the event of the widening of Oak Lane, it will be necessary to use a portion of the strip it is proposed to sell for the reinterment of bodies which now rest along the Oak Lane front; that a sale of the strip would violate the trust for

which the land was granted and devised, and that the proceeds of the sale would not be used or applied to the same religious uses and trusts as intended by David Rorer.

We think there is force in this argument. Undoubtedly, as the donor did not provide for a remainder or reversion, the church corporation took an estate in fee, but that does not mean that the trustees or the church congregation may do with the property as they please; they are answerable to the Commonwealth, acting through the Orphans' Court, and the consent of the Orphans' Court, in the exercise of its visitorial powers, is necessary to make a good title to the land. It is a general rule that where a testator creates a valid trust for a specific charitable use, the land so held cannot be conveyed away by the trustee (see Nauman v. Weidman, 182 Pa. 263) ; there are, however, classes of cases where the object of the trust has come to an end or conditions have suffered a material change, in which the court will decree a sale and supervise the application of the proceeds to the same use. Such was the case of the Mercer Home, Fisher's Appeal, 162 Pa. 232, in which the court authorized the trustees of the home to sell a small portion of the land remote from the buildings occupied by the home, it appearing that the tract which it was proposed to sell could not be used advantageously, and if sold, the proceeds could be invested and the income applied to the upkeep of the home; while, on the other hand, if not sold, this particular piece would be an expense to maintain, so that the charity would lose in both directions; that is, by the expense of keeping the tract and by the loss of the income which might be derived from the investment of its proceeds.

The case at bar is quite different. That the use of the strip along Cheltenham Avenue for religious purposes is a distinct benefit to the lot owners is obvious, and it is equally obvious that, in the event of a sale, the land might be put to a use which would be very objectionable to those whose relatives are buried in the tract and who bought their lots in the belief and expectation that the Cheltenham Avenue front would continue to be used for religious purposes; and such an objectionable use would be particularly offensive upon the occasion of a funeral. One difficulty in the situation arises from the fact that the Oak Lane Baptist Church no longer keeps any portion of the tract in order, and it might be, if the owners were unable to maintain the property, that we would authorize a sale and direct the fund to be invested for the care of the cemetery; but this would not fulfill the purpose of the present application, nor be in accordance with the desires of the Trustees of the Oak Lane Baptist Church, who wish to put the purchase money in bricks and mortar and leave the lot owners to shift for themselves. That there is still need of a church at that location was testified to by one of the witnesses, and there was evidence showing the probability that the Baptist City Mission would take over the old church for missionary purposes. This would be a happy way out of the difficulty and would be in full accord with the intention of the testator, who was farsighted enough to contemplate the possibility of the removal of the congregation composing the Union Baptist Church, and who, therefore, provided in his will that should the Society of Baptists as a religious body become extinct, the land should be held in trust by the Central Union Association of Independent Baptist Churches until such time as there shall be Baptists again in the neighborhood.

It is proper to call attention to the fact that the congregation of the Oak Lane Baptist Church, while they approved the sale of the whole tract at the time the proposed sale was before Court of Common Pleas No. 1, have not approved the sale which is now proposed and which they should do before a

3 D. & C.

sale is authorized. Counsel stated, however, that there would be no difficulty in obtaining such permission, and for present purposes we have assumed that the desired permission would be given, preferring to base our refusal to authorize a sale on the reasons above given.

The exceptions are sustained, and the prayer of the petition of the Oak Lane Baptist Church is refused.