335 A.2d 352

In the Matter of the CONVEYANCE OF LAND BELONG-
ING TO the CITY OF DuBOIS.

Appeal of DuBOIS GATEWAY FAIR ASSOCIATION,
INC., and John E. DuBois, Jr.

Supreme Court of Pennsylvania.

Argued April 27, 1973.

Decided March 18, 1975.

162

Richard M. Sharp, John J. Pentz, Philipsburg, for appellants.

Edward V. Cherry, DuBois, for appellee, City of DuBois.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

By deed dated December 21, 1930, John E. DuBois and Willie G., his wife, conveyed to the City of DuBois a number of tracts of land. The deed conveying the land contained the following conditions:

"The land herein described is conveyed to City of DuBois for industrial and park purposes. At any time the said City of DuBois shall designate any part of said lands as a public park, then said lands shall be withdrawn from industrial purposes and from then on shall not be sold or leased for industrial purposes."

"Industrial Purposes" was defined in the deed as:

"By 'Industrial Purposes' is meant the location for such factories, railroads, or other concerns that may come to the city needing a location, and the said grantee may convey said lands either on lease for a term of years, or in fee simple, but before such conveyance is made, said industry shall be submitted to the

scrutiny of the Industrial Committee of the DuBois Industrial Association of the First Class, or its successors and assigns, and upon its approval, lands may be either leased or conveyed for industrial purposes."

The deed further directed that before there could be a sale entered into or a lease executed there would have to be approval for the transaction from the DuBois Industrial Association (this body has been superseded by the Industrial Committee of the DuBois Area Chamber of Commerce).

A portion of the land conveyed to the city by the aforementioned deed was a 25.5 acre tract situated within the city limits. By lease dated May 1, 1967, this tract was leased by the DuBois Gateway Fair Association, Inc., an appellant herein, for a period of ten years.[1] In January of 1970, Green Dot, Inc., a Pennsylvania corporation approached the DuBois Area Chamber of Commerce seeking their approval to buy 6.3 acres of land, of which approximately 3 acres were under the lease that had been given to appellant, Gateway Fair Association. The committee recommended the sale and the City Council of the City of DuBois appointed a committee to meet with representatives of Green Dot, Inc. to determine the conditions of sale.

Pursuant to these negotiations, the City Council on July 6, 1970, adopted an ordinance authorizing the execution of an agreement permitting the conveyance of the said 6.3 acre tract to Green Dot for the sum of $9,000.-00.[2] This agreement of sale was contingent upon the ob-

1. Gateway Fair Association, Inc. is a nonprofit corporation. The land was leased for the purpose of holding an annual fair, horse racing and various allied purposes.

2. Under the terms of Ordinance No. 1121, the purchaser was also responsible for (a) one-third of the cost to the city to construct street and drainage facilities, (b) the cost of designing, building and maintaining sanitary sewers, (c) $4,200.00 toward the cost of a 12-inch water line, (d) $7,900.00 to the city, for the construction of four new picnic shelters, (e) $25,000.00 to the city, if after 48 months, purchaser has not completed the shell for 150,000 square

taining of court approval under the provisions of the Revised Price Act.[3]

Upon learning of the action taken by the City Council a complaint in equity to restrain the proposed sale was instituted by John E. DuBois, Jr., and Caroline DuBois, children of the original grantor, and the DuBois Gateway Fair Association, Inc.[4] After the filing of an answer by the city and a hearing, an order was entered on June 2, 1971, which provided as follows:

> "NOW, this 2nd day of June, 1971, the Court having heretofore issued a preliminary injunction enjoining the City from selling the picnic area; more particularly bounded and described in Ordinance No. 1121 of the City of DuBois, and the parties hereto having agreed that since the City of DuBois holds said land in trust for park purposes it can only be sold under the provisions of the Revised Price Act, and the preliminary injunction issued against the City of DuBois enjoining it from selling the park property is hereby dissolved, and it is further ordered that the surety upon the bond heretofore filed be and it is hereby released from further responsibility thereunder. It is further ordered that all parties one to the other have released each other from any and all liability for; the institution of the instant proceeding for injunction and the consequent issuance and imposition of the injunction prayed for in the said proceeding, including the intended purchaser."

feet for shopping facilities and has not reconveyed the 6.3 acres of land to the city, (f) all legal costs and fees involved in obtaining court approval of the sale of land.

3. Revised Price Act of June 7, 1917, P.L. 388, § 25; 1939 May 12, P.L. 126; as amended 20 Pa.S. § 8201 et seq., eff. July 1, 1972 (Supp.1973).
 All proceedings in this action were instituted pursuant to Act of 1917 as amended, 20 P.S § 1561 et seq.

4. The record is not clear, but it appears that Caroline DuBois died at some point during these proceedings. This possibly explains why she was not a party to the proceedings under the Revised Price Act.

No appeal has been taken from this order.[5]

Subsequently pursuant to the direction of the order of June 2nd, the City of DuBois filed a petition for authorization and confirmation of the conveyance of land in question under the provisions of the Revised Price Act, *supra*.[6] The petition was answered by John DuBois, and DuBois Gateway Fair Association, Inc.[7] After a hearing, the court, by Memorandum and Order on December 21, 1971, permitted the sale subject to the lease-hold interest of Gateway Fair Association.[8]

5. No notice was given to the Attorney General of the Commonwealth.

6. The Revised Price Act provides for two methods of sale. Either a public auction, requiring public notice, and court confirmation or a private sale authorized or directed by a court. This petition was for authorization of a private sale. Revised Price Act, *supra* § 20(a), 20 P.S. § 1761.

7. Pursuant to section 20(b).

8. On December 22, 1971, the court slightly modified its order of the previous day. The final Memorandum and Order provides:

"NOW, December 22, 1971 the Court inadvertently referred in its Order of March [sic] 21, 1971 to a lease to Green Dot, Inc., whereas it should have read Gateway Fair Association, Inc., therefore, the order heretofore entered on December 21, 1971 is amended to read as follows:

### MEMORANDUM & ORDER

The Court has determined that there is no basis for refusing or denying the right of the City of DuBois to convey the land involved in this proceeding. Everything required under the Revised Price Act and the cases decided in reference thereto is answered for in this situation. Therefore the Court is obliged to grant the right of the petitioner to make such conveyance.

However in so determining the Court is required also to recognize that the DuBois Gatewate Fair Association, Inc. cannot be denied its rights under the Lease from the City of DuBois for the acreage included therein. There is nothing that the Court finds which would permit the denial of the leasee of a portion of the land and, therefore, the Court enters the following

### ORDER

NOW, December 21, 1971 it is hereby ORDERED that the City of DuBois be and it is hereby authorized and granted the right to convey the premises described in the petition to Green Dot, Inc. under the terms and conditions of the Ordinance thereunto appli-

■ While the parties have raised numerous objections to the merits of the instant matter, these issues need not be reached. In our judgment the appellants herein did not have standing to bring this appeal. The Revised Price Act, § 20(b) [9] provides:

> "§ 1762. Objections to private. sale and proceedings thereon
>
> Any party interested as heir, devisee, or intending purchaser, or any legatee whose legacy is by the express terms of the will or by law charged on such real estate, may appear and object to such private sale on account of the insufficiency of the price, and, if such objection be sustained, may offer to give or pay a substantial increase for such property; and the court, at its discretion, may thereupon authorize or direct such sale, or refuse to authorize or direct the same, and accept any substantially increased offer, and may authorize the sale of such property to such a new bidder, upon compliance with the conditions of sale and giving such security as shall be directed by the court; or such party interested or legatee may appear, as aforesaid, and object to such sale on any legal or equitable grounds: Provided, That nothing herein contained shall be construed to affect the existing law with respect to objections to public sales. 1917, June 7, P.L. 388, § 20(b)."

It is clear from this section that in order to raise objections to a sale of this nature the party objecting must establish either that he possesses an interest as an heir, a devisee, prospective purchaser, or a legatee whose legacy is charged on the parcel in question. John DuBois, Jr.,

cable, subject however, to the lease-hold of the Gateway Fair Association, Inc. in and to the portion of said land for which is already under Lease to the said Gateway Fair Association, Inc.

Costs shall be paid by the City of DuBois.

*Full Opinion will be prepared and entered only upon Appeal.*

9. 20 P.S. § 1762.

does not fall within any of these stated capacities. The appellant, DuBois, relies primarily for standing on his alleged status as an heir. Upon reviewing the record we find this contention to be without merit. While it is undisputed that he was in fact one of the children of the original grantor and therefore presumably [10] entitled to any interest possessed by the grantor at the time of his death, we however conclude that the original grantors had no interest in this parcel to pass at their death. This conclusion is evident after full consideration of the deed to the City of DuBois of December 22, 1930.

A deed is to be interpreted in light of the conditions existing when it was executed. The entirety of the language is to be considered. See, *St. Michael and Archangel Russian Orthodox Greek Catholic Church v. Uhniat,* 451 Pa. 176, 301 A.2d 655 (1973); *Highland v. Commonwealth,* 400 Pa. 261, 161 A.2d 390 (1960). Our primary object is to ascertain and effectuate the intention of the parties. As we pointed out in *Brookbank v.*

10. We presume that John DuBois, Jr. was entitled to any interest retained by the grantor; the record does not indicate otherwise. Compare, *Girt Estate,* 452 Pa. 156, 305 A.2d 372 (1973).

In *Heffner's Appeal,* 119 Pa. 462, 13 A. 314 (1888) where an order of sale was appealed from by "Benjamin Heffner, a son and legatee named in the last will and testament of Henry Heffner . . .", this Court reversed the decree and set aside the order of sale where the petition for conveyance was filed by Martin Heffner "a son and devisee and heir of Henry Heffner."

"The petition does not set forth that the petitioner has any interest in the property which he asks to have sold. It is true it contains one short extract from the will of Henry Heffner, and alleges that he is a son and devisee of the said testator, but for aught that appears the land in question may have been devised to some one else . . . there is a brief description of the property, and it is alleged to be the estate of the testator; but this will not cure the entire absence of any averment of interest on the part of petitioner . . . no copy of the will of Henry Heffner is attached to the petition, and made a part thereof, as is always the case where such proceedings are conducted . . . ." *Id.* at 466, 467, 13 A. at 316.

In the instant case, the appellee did submit a copy of the deed to substantiate its interest in the land. John DuBois submitted nothing more than his assertion of interest as a son and devisee. Cf. *Hower's Appeal,* 55 Pa. 337 (1867).

*Benedum Trees Oil Co.,* 389 Pa. 151, 157, 131 A.2d 103, 107 (1957):

> "In interpreting this instrument certain rules of construction are applicable: (1) the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words; (2) effect must be given to *all* the language of the instrument and no part shall be rejected if it can be given a meaning; (3) if a doubt arises concerning the interpretation of the instrument it will be resolved against the party who prepared it; (4) unless contrary to the plain meaning of the instrument, an interpretation given it by the parties themselves will be favored; (5) 'To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed' ". (Citations omitted).

See also, *Yuscavage v. Hamlin,* 391 Pa. 13, 137 A.2d 242 (1958). By applying these rules of construction and interpretation to the instant deed, it is crystal clear that the grantors intended their *entire* interest in the land to be conveyed.[11]

■ The language and terms of the deed indicate an area of eighteen acres (only a portion of which is in dispute here) to be forever conveyed. There is an obvious intent that a use for park purposes would be superior to industrial use,[12] however, the words do not evidence an

11. All parties concede the mining rights had been specifically excepted and reserved.

12. The record indicates that at the time of execution of the instrument, the land was in large part used as a park. The circumstances and the factual background at the time of execution are

intention that the grant of the estate was qualified or conditioned in any manner. The expression was a limitation of the use of the land and not a limitation of the title.

In *Abel v. Girard Trust Co.*, 365 Pa. 34, 37–38, 73 A.2d 682, 684 (1950), this Court quoted with favor portions of *Pearson et al. v. Nelley et al.*, 331 Pa. 376, 379, 200 A. 654 (1938) as follows:

> "In arriving at the intention of the grantors it is first to be noticed that there are no words indicating that the parties intended that on the removal of the courthouse and the prison or either the vacated land should revert to the grantors. It has long been settled that mere expression of a purpose will not of and by itself debase a fee. It has likewise been held that when limitations are relied on to debase a fee they must be created by express terms or clear implication, a result of the policy of the law favoring alienability of land . . . And, for reasons already stated, if we disregard the absence of technical terms or provisions importing a condition or limitation, and examine the deed with a view of eliciting the clear intention of the parties, we are driven to the conclusion that it was the intention of the grantors to convey their entire estate in the land . . .
>
> A fee may be cut down only by a clearly expressed, or necessarily implied, intent of the grantor. Where there is a conveyance to a corporate grantee, the addition of the words 'for no other use or purpose whatsoever', is not *of itself* sufficient to create a base fee where the purpose expressed in the limitation and in the corporate charter are similar." (Emphasis in original) (Citations omitted).

relevant and effect a more complete understanding of the intent of the grantors. See *St. Michael v. Uhniat, supra; Kimmel v. Svonavec*, 369 Pa. 292, 85 A.2d 146 (1952); *Brookbank v. Benedum Tress Oil Co., supra.*

Compare, *Loechel v. Columbia Borough School District,* 369 Pa. 132, 85 A.2d 81 (1952).

A reading of the entire deed is consistent with an interpretation that the grantors intended to convey the title to their lands without reservation, reversion, or forfeiture. Further support for the obvious intention of the parties is set forth in the first paragraph.

"Witnesseth, that in consideration of One ($1.00) Dollar, in hand paid, the receipt is hereby acknowledged, the said Grantors (John E. DuBois and Willie G. DuBois, his wife) do hereby grant and convey to the said Grantee (City of DuBois), its successors and assigns. All these certain messuages or pieces of land situate in the City of DuBois, County of Clearfield, and state of Pennsylvania, boweled and described as follows:".

All the language of the deed must be given effect and when the language of the deed is clear and unambiguous the intent of the parties must be gleaned solely from its language. *Teacher, Exrx, et al v. Kijurina,* 365 Pa. 480, 76 A.2d 197 (1950). Entirely consistent with this principle we recognize that the grantor could have added a phrase or clause reserving a conditional interest in the land.

Under such circumstances we cannot construe this conveyance to be limited in any way. Clearly, John E. DuBois and his wife, granted and conveyed their entire right, title and interest to the land. John E. DuBois, Jr., had no interest in the land as none was left to him, therefore he has no standing as an heir to object to the private sale of the land.

John DuBois, Jr., also asserts standing to challenge this sale as a taxpayer and a citizen of the City of DuBois. Appellant has ignored the entire purpose of the Price Act in his attempts to frustrate the sale. Historically when land was held in trust by individuals, or deed-

ed or willed to a city a special Act of Assembly was required to consummate a sale or to quiet title. Eli K. Price, an astute barrister of the 1800's was selected, at the request of the Pennsylvania Governor, to head a select committee to research the state of the law and draft legislation with the objective " . . . to extend the power to sell real estate, and to avoid special legislation, by enabling the courts to adjudicate matters relative to such sales, after a full hearing of all parties, not to supersede the wholesome statutory regulations which had been already provided for the sale or mortgage of real estate of decedents, or of minors, by administrators or guardians" *Spencer v. Jennings,* 114 Pa. 618, 624, 625, 8 A. 2, 4 (1886). Additionally, this procedure was available "in all cases where estates have been or shall be devised or granted in trust, or for special or limited purposes, or when any party interested therein is under a legal disability to sell and convey the same."[13]

■■ By its very nature, the Act was intended to facilitate the removal of encumbrances and to foster the alienability of land. The express words of section 20(b) [14] specify the class of eligible objectors to a private sale; persons with tangential interest may not intervene.

"Its [the Act's] design is well expressed in the preamble of the act, to make *real estate* freely alienable and productive to the *living* owners thereof. Though not unmindful of the future, and of the duty owing to posterity, the special interests of society belong to the men of to-day, rather than to those of another generation. The intention of this law is manifestly to untie the cords which fetter the real estate of the Commonwealth, whether bound around it by the disabilities of persons. The limitations of contingent interests, or by restrictions to limited uses and purposes, and at the

13. Price, On the Act for the Sale of Real Estate (1874), p. 120.
14. 20 P.S. § 1762.

same time to preserve to every interest its proper share in the result. The law being beneficient and remedial, is not to be so construed as to defeat its main intent. Such has been the expression of opinion by this court in its favor: *Smith v. Townsend,* 8 Casey 444 [434]; *Gilmore v. Rodgers,* 5 Wright [120] 128." (Emphasis in original) *Burton's Appeal,* 57 Pa. 213, 219 (1868).

█ When real estate is approved for sale by a court not under the Act the language and intent of the grantor or testator is the paramount consideration. *Curtis Estate,* 452 Pa. 527, 307 A.2d 251 (1973); *Loechel v. Columbia Borough School District, supra.* However, under Revised Price Act proceedings where the court's concern is to benefit living persons and the best interests of the estate, courts have the authority to order the sale of real estate even in the face of a positive prohibition in the grant or devise. In *Myers v. Crick,* 271 Pa. 399, 114 A. 255 (1921) our Court discussed the considerations involved in such a sale:

"It is sufficient to say that appropriate legislation is found in the Price Act of 1853, as revised in 1917 . . . , by which land may be unfettered when such a restriction has been attempted, and changed conditions make such a course advisable, so long as the proceeds of the sale are held upon the same trust. It must be found, of course, that the sale will not prejudice the 'trust, charity, or purpose' for which the same is held, and that it can be made without violation 'of any law conferring an immunity or exemption from sale or alienation.' 'The prohibition of sale here does not arise from any statute, from the nature of the property or of the trust upon which it is held, nor from any inherent limitation in the power of the trustee, but rests, so far as it exists at all, on the directions of the testator.' Orders to sell, made in appropriate cases, and under circumstances similar to those

found here, have been frequently approved in Pennsylvania".

See also, *Petition of Franklin Street Church*, 249 Pa. 275, 95 A. 89 (1915); *Seif v. Krebs*, 239 Pa. 423, 86 A. 872 (1913); *Mercer Home, Fisher's Appeal*, 162 Pa. 232, 29 A. 731 (1894). Cf. *City of Philadelphia v. Heirs of Stephen Girard*, 45 Pa. 9 (1863).

 To allow the public at large to object to a court sale, causing long, protracted litigation under the Revised Price Act, would produce a result inconsistent to the avowed purpose of free alienability of land. All members of the small class of persons expressly allowed to object under section 20(b) have direct, personal and pecuniary interests to protect. In fact, the interests of heirs and devisees are already protected by section 10 [15] of the Act in that the proceeds of sale, mortgage or rent, "shall be held for and applied to the use and benefit of the same persons and for the same interests, legal or equitable, present or future, vested, contingent or executory, as the title so sold, mortgaged, conveyed on ground-rent, let, partitioned, or exchanged had been subject or held . . . ." By these same provisions, the legislature did not overlook the public beneficiaries of trusts. Their interests are too remote to provide suitable standing to object, but their rights can be amply secured by proper orders respecting the purchase-money. See *Goodman Appeal*, 425 Pa. 23, 227 A.2d 816 (1967); Cf. *In re: Penn-Gaskell's Estate (II)*, 208 Pa. 346, 57 A. 715 (1904); *Hepburn's Appeal*, 65 Pa. 468 (1870); *Grenawalt's Appeal*, 37 Pa. 95 (1860). Moreover, as in the instant case, when a municipal corporation is acting in a fiduciary capacity "it is not only the right but the statutory duty of the judiciary to inquire into the propriety of the actions of municipal officers in disposing of assets which the municipality holds in trust." *Goodman Appeal, supra*, 425 Pa. at 31, 227 A.2d at 821.

15. 20 P.S. § 1644.

There is no provision in the Revised Price Act for objections to be made by citizens or taxpayers. The words of section 20(b) are explicit and free from all ambiguity.[16] The Act specifically provides that only parties "interested as heir, devisee or intending purchaser, or (certain) legatee(s) . . . " may object to a private sale. We have been offered no valid and compelling reasons why the language of this section should be extended to beneficiaries of a public trust. To the contrary it is fully apparent that the interest of the public is fully protected under the terms of the Act.

Gateway Fair Association has appealed the order of the court below. This appellant, however, admits that the court approved the sale of the land *subject to the outstanding lease to the Gateway Fair Association, Inc.* Clearly appellant is not a party aggrieved by the order and thus is without standing in this appeal.

"Who is a 'person aggrieved' has been explained many times by this Court. In *Pennsylvania Commercial Drivers Conference et al. v. Pennsylvania Milk Control Commission et al.*, 360 Pa. 477, 62 A.2d 9 (1948), this Court reiterated what it had said in *Lansdowne Borough Board of Adjustment's Appeal,* 313 Pa. 523, 525, 170 A. 867, 868 (1934): ' "A cardinal principle, which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a (direct) interest in the subject-matter of the (particular) litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have a (direct) interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial." ' To be thus aggrieved the interest of the party must be adversely affected by the order, judgment or decree

**16.** Statutory Construction Act of 1972; 1 Pa.C.S. §§ 1504 and 1921(b) (Pamphlet 1973).

appealed from. Thus, in *Atlee Estate*, 406 Pa. 528, 532, 178 A.2d 722, 724 (1962), this Court said: 'A party is "aggrieved" when he is directly and adversely affected by a judgment, decree or order and has some pecuniary interest which is thereby injuriously affected.' " *Louden Hill Farm, Inc. v. Milk Control Commission*, 420 Pa. 548, 550, 551, 217 A.2d 735, 736 (1966).

*Pierro v. Pierro*, 434 Pa. 131, 252 A.2d 652 (1969).

Under these circumstances where the court noted in its Memorandum "[Gateway Fair Association] cannot be denied its rights under the Lease from the City of Du-Bois. . . . There is nothing that the Court finds which would permit the denial of the leasee of a portion of the land. . . . " and entered an Order consistent with these findings, the appeal of Gateway Fair Association, Inc. must be quashed.

 We therefore find that appellants herein are without standing and consequently this appeal must be quashed.[17]

JONES, C. J., took no part in the consideration or decision of this case.

ROBERTS, J., concurs in the result.

MANDERINO, J., filed a concurring opinion.

MANDERINO, Justice (concurring).

I concur in the result, but I do not agree that John E. DuBois, a taxpayer and citizen of the City of DuBois, did not have standing. I would, however, affirm the trial court's decree on the merits.

17. Although no motion to quash was before this Court, we are not precluded from disposing of the appeal in this manner. Cf. Pa. Commercial Drivers Conference v. Pa. Milk Control Commission, 360 Pa. 477, 62 A.2d 9 (1948).