## Atlee Estate.

Argued January 3, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Edward Kassab,* for appellant.

*Henry W. Maxmin,* with him *Edward F. Hitchcock, Myron Jacoby,* and *Jacoby & Maxmin,* for appellees.

*James L. Rankin* filed a brief under Rule 46.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 13, 1962:

W. L. Atlee (decedent), a Delaware County resident, died testate, on December 15, 1958 and letters testamentary were issued to James L. Rankin.

Only two paragraphs—paragraphs 10 and 11—of decedent's will are presently pertinent. In paragraph 10, decedent gave to the Third Presbyterian Church of Chester, Pa. (Church), "a full ten percent of all the residue of [his] estate" stating that this bequest *"shall be void in the event that I am not a member of said Church at the time of my decease, and it shall also be void in the event that said church as of the date of my*

*death is not holding regular church services in its present location on the North side of Ninth Street between Upland and Potter Streets, Chester, Pennsylvania.*" decedent then directed that, if the bequest became effective, no part thereof should be used to purchase a new church site, to pay the cost of such acquisition or of any improvements erected upon such new church site: decedent directed "that said bequest and all income derived therefrom shall be administered by the Session of said church and shall be used exclusively for the preaching of the Gospel, the teaching of the Bible, preaching missions and evangelistic services in Chester and elsewhere."

Paragraph 11 provides that: *"In the event that the bequest contained in [paragraph 10] to the [Church] shall become void,* I direct that the said ten percent of the residue of my estate . . . shall be given to and equally divided among Toccoa Falls Bible Institute . . ., the Fuller Seminary . . . and Presbyterian Children's Village . . . ."

The executor filed his first and final account in the Orphans' Court of Delaware County which was audited on November 2, 1959. At the time of audit, the court was informed of the undisputed facts that decedent at the time of his death was a member of the Church and that the Church was holding regular church services at its location on the north side of Ninth Street between Upland and Potter Streets, Chester. On November 23, 1959 the court confirmed nisi the account and awarded, inter alia, 10% of the residue of the estate to the Church in accordance with paragraph 10. No exceptions were filed to that account and, on December 8, 1959, the account was confirmed absolutely.

On February 15, 1960, the executor filed a petition to amend the adjudication wherein he sought to cancel and revoke that part of the adjudication which had made an award of the bequest to the Church. The basis

of this petition was that the members of the "corporation" of the Church at a special meeting and the trustees had voted to *reject* the bequest to the Church. Upon filing of that petition, the Presbytery of Philadelphia (Presbytery), as the superior judicatory of the Church requested permission to intervene and this permission was granted. The Presbytery and its Administrative Commission (Commission) filed an answer in which they averred, inter alia, that the Session of the Church, the superior constituted body of the Church under the Constitution of the Presbyterian Church of the U.S.A., had accepted the bequest and such action had been ratified by the Commission of the Presbytery. Answers to the petition were also filed by the three alternative legatees under paragraph 11 of the will, including Toccoa Falls Institute (appellant), each alternative legatee requesting a one-third share of the "rejected" bequest. After the taking of testimony, the court below dismissed the executor's petition and directed the executor to comply with the adjudication of November 23, 1959 by making immediate payment of the bequest to the Session of the Church. On February 28, 1961, the executor delivered a check in the amount of the bequest ($48,568.70) to the Session of the Church and received in exchange therefor a Satisfaction of Award which is now filed of record.

On or about April 24, 1961, Toccoa Falls Institute filed an appeal to this Court. On October 27, 1961 appellees (the Church, the Commission and the Presbytery) filed a motion to quash the appeal. On November 3, 1961 we directed that such motion be heard at the time of oral argument on the merits.

The motion to quash this appeal is based primarily on two grounds: (1) Toccoa Falls, the sole appellant, has no standing to appeal; (2) the matter in controversy is moot.

The Orphans' Court Act of 1951 provides that any "party in interest who is aggrieved by a final order or decree of the orphans' court, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the proper appellate court. . . .": Act of August 10, 1951, P. L. 1163, §771, 20 PS §2080.771. A party is "aggrieved" when he is directly and adversely affected by a judgment, decree or order and has some pecuniary interest which is thereby injuriously affected. In *Lansdowne Borough Board of Adjustment's Appeal,* 313 Pa. 523, 525, 170 A. 867, we said: "A cardinal principle, which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a [direct] interest in the subject-matter of the [particular] litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have a [direct] interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial." See *Bridges's Estate,* 318 Pa. 591, 179 A. 70.

Wherein does this appellant have a standing to appeal? Appellant, Fuller Seminary and Presbyterian Children's Village are given, under paragraph 11, ten percent of the residue of this estate *only* in the event that the bequest to the Church in paragraph 10 *"shall become void"*. When does such bequest become void? To the solution of that problem we need turn to no dictionary definition of the word "void" because the decedent has clearly and explicitly delineated when the bequest under paragraph 10 shall become "void". Decedent states in paragraph 10 that the bequest to the Church *"shall be void"* if, at the time of his death, either he is not a member of the Church or the Church is not at the same location as at the time of execution of the will. Concededly, decedent was a member of the Church and the Church was at the same location, there-

fore, the bequest never became "void" and appellant, the Seminary, and the Village never became entitled to take.

Appellant, however, argues, that, since the Church "rejected" the bequest, such "rejection" rendered the bequest "void". Such equation of "void" with "rejection" is in direct contravention of the terms and provisions of the will and without merit. Furthermore, if the court below had found or if this Court should determine that the Church, by a duly constituted and appropriate body, had rejected and refused to accept this bequest, such bequest could not be awarded to the alternative legatees, including the appellant. Instead, however, the court would have had to order the distribution of the bequest "for a charitable purpose in a manner as nearly as possible to fulfill the intention of [decedent], whether his charitable intent be general or specific": Estates Act of 1947, Act of April 24, 1947, P. L. 100, §10, 20 PS §301.10. Under any theory, therefore, appellant has no standing to prosecute this appeal.

Moreover, the executor having paid the bequest to the Church and having received a satisfaction showing the payment of said bequest in accordance with the direction of the court, the controversy is now moot.

Appeal dismissed. Each party to bear own costs.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:
I would hold:

(1) that Toccoa Falls Institute was an aggrieved party, (2) that it had a right and a standing to appeal, (3) that the question was not moot and the appeal should not be quashed, and (4) I would affirm the decree of the Orphans' Court.