## John F. Davis Company v. Pennsylvania Milk Control Commission

608

*Edward C. First, Jr., McNees, Wallace & Nurick,* for appellant.

*William D. Morgan,* for Commonwealth.

LIPSITT, J., December 29, 1966.—This is an appeal filed by John F. Davis Company from an order of the Pennsylvania Milk Control Commission (hereinafter called "commission") dated June 7, 1966.

The action originated on a petition by the Pennsylvania Restaurant Association requesting that bulk milk or cream used in restaurants for the preparation of foods be exempted from the resale pricing provisions of the commission's official general orders.

Under the authority of the Pennsylvania Milk Control Law of April 28, 1937, P. L. 417, as amended, 31 PS §700j-101 et seq., the commission had divided milk, for regulatory purposes, into two principal classes on the basis of use. Generally, Class I is comprised of

fluid milk utilized for beverage purposes and Class II is comprised of milk utilized for manufacturing purposes. A minimum price is set by the commission on both wholesale and retail sales of Class I milk (section 802 as amended, 31 PS §700j-802); however, Class II milk is ordinarily sold at a negotiated price.

The purpose of the petition of the Pennsylvania Restaurant Association was to obtain a Class II price for milk sold to restaurants and used in the preparation of food. Presently, Class I wholesale prices are paid by restaurants for all milk used in the same location regardless of whether the milk is resold as a beverage or used in food processing.

This appeal was not filed by the Pennsylvania Restaurant Association, the original petitioner to the commission. Appellant is John F. Davis Company (hereinafter referred to as "Davis" or "appellant"), a Delaware corporation whose principal business activity is the operation of restaurants and cafeterias in department stores and motels located in Milk Marketing Area no. 5, known as the Scranton Milk Marketing Area. In addition, Davis operates a separate commissary where milk or cream is employed for food processing for use in the restaurants and cafeterias operated by Davis. No milk is resold as a beverage to consumers from the said commissary. Presently, milk purchased for use in food manufacturing at a separate commissary is exempted from the Class I regulations, so long as no milk is sold as a beverage on the premises. Currently, bakeries enjoy this exemption. Davis contends that hotels and restaurants should be allowed the same opportunities to purchase milk for food manufacture at a negotiated price (i. e., exempt from resale pricing provisions applicable to Class I milk), and to do so even where such manufacturing takes place at the same location where milk might be sold as a beverage. It is also urged that the present orders,

which grant an exemption to manufacturers of food products such as bakeries and deny the exemption to hotels and restaurants, are arbitrary, unfair and illegally discriminatory.

Several observations must be made initially before discussing the legal aspects of this case. The appeal petition identifies appellant as being engaged in the handling, manufacturing, consumption and resale of milk and milk products, both as a beverage and in manufacturing. As such, appellant is a "milk dealer" or "handler" as defined in the Pennsylvania Milk Control Law, section 103 as amended, 31 PS §700j-103. The testimony taken at the hearing reveals that appellant operates, in conjunction with his restaurant business, a commissary where milk or cream is employed in food processing at a location separate and apart from its other enterprises. Appellant, although without knowledge for some period of his right to treat the commissary milk as Class II, did at the time of hearing purchase milk employed in food preparation at said commissary at negotiated prices, pursuant to the provisions of the applicable official general orders of the milk marketing area.

Appellant filed this appeal on its own behalf, although the effect of the appeal is to amend or revise orders presently in existence *in each of the thirteen milk marketing areas throughout the Commonwealth.*

A related type of appeal from a general order was recently before this court. In Louden Hill Farm, Inc. v. Milk Control Commission, 84 Dauph. 46 (1965), affirmed by the Supreme Court of Pennsylvania on March 22, 1966, 420 Pa. 548 (1966), the issue presented was whether Louden Hill Farm, Inc., was a "person aggrieved" to appeal an order of the commission within the meaning of the Milk Control Law. It was held that Louden Hill Farm, Inc., had no standing to appeal. The Supreme Court, at 550-51, defined and

explained a "person aggrieved" in the following language:

"Who is a 'person aggrieved' has been explained many times by this Court. In Pennsylvania Commercial Drivers Conference et al. v. Pennsylvania Milk Control Commission, 360 Pa. 477, 62 A. 2d 9 (1948), this Court reiterated what it had said in Lansdowne Borough Board of Adjustment's Appeal, 313 Pa. 523, 525, 170 Atl. 867, 868 (1934) : ' "A cardinal principle, which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a direct interest in the subject matter of the particular litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, *and not a remote consequence of the judgment. The interest must also be substantial.*' " To be thus aggrieved the interest of the party must be adversely affected by the order, judgment or decree appealed from. Thus in Atlee Estate, 406 Pa. 528, 532, 178 A. 2d 722, 724 (1962), this Court said: 'A party is "aggrieved" when he is directly and adversely affected by a judgment, decree or order and has some pecuniary interest which is thereby injuriously affected' ". (Italics added).

In regard to this appellant, any grievance it has would at best be remote and speculative. As noted previously, Davis is regarded under the Milk Control Law as a "dealer" or "handler". Section 802, as amended, of said law makes it mandatory upon the commission to establish a minimum wholesale price for milk sold, delivered or consigned by milk dealers or handlers to other milk dealers. In doing so here, the commission has invaded no legal right of appellant. Where Davis operates restaurants which have facilities for food preparation, it is within the same class of all such per-

sons and regulated uniformly. In its operation of a commissary separate and apart from its other restaurant enterprises, it is acknowledged that Davis now and always had the opportunity to purchase milk used in food preparation at such premises at a negotiated price. The orders issued by the commission are general in nature and treat Davis no differently than any other "dealer" or "handler". Therefore, it cannot be said, as Davis has asserted, that the commission's orders are arbitrary and illegally discriminatory.

Although it may be presumed that it would be beneficial to pay negotiated prices for a part of the milk handled in a restaurant location, its extent is purely speculative. Indeed, there is no evidence presented in the record to clearly demonstrate the manner in which this particular appellant would suffer direct, immediate and substantial pecuniary loss or injury by the order of the commission declining to provide for an exemption from resale pricing as advocated.

Neither can appellant step into the shoes of other persons or parties who may be adversely affected for the purpose of effecting an appeal: Rieck Dairy Co. v. Milk Control Commission, 69 Dauph. 345 (1956). Nor does the mere fact that appellant Davis participated as an interested party and as a witness in the original hearing conducted by the commission automatically bestow the right of appeal upon it, even though appellant may be a member of the class affected by the order of the commission: Arsenal Board of Trade v. Pennsylvania Public Utility Commission, 166 Pa. Superior Ct. 548 (1950).

An analysis of the Milk Control Law provides additional reasons to deny this appeal, quite apart from the lack of status of Davis as an "aggrieved party".

It has been pointed out that section 802, as amended, of the law imposes the duty upon the commission to fix by official order minimum wholesale

prices to be charged and received by milk dealers for milk sold or delivered by milk dealers to other milk dealers or handlers. It is agreed here that Davis and/ or another party in a similar business activity is considered a "milk dealer" or "handler" by definition in section 103, as amended, of the Pennsylvania Milk Control Law. Accordingly, the commission has performed its legal function by establishing the minimum prices which are charged to Davis or persons in similar business activity regulated by the commission.

The commission in its findings has found that the resale price of milk to restaurants falls within the wholesale price structure. It has been found and concluded that the returns to the dealers for milk sold to restaurants was taken into consideration in ascertaining the reasonable rate of profit to the cross-section of the normally efficient dealers in the respective areas. This is pursuant to provisions of section 801, as amended, of the law, which sets forth the requisites of orders fixing prices of milk.

It is argued by appellant that dealer profits are a secondary consideration under the Milk Control Law. Certainly a review of the statute would confirm that the main purpose of the law is to insure an adequate and safe supply of milk for the public. Appellant feels that the policy of the commission in requiring restaurants that utilize two classes of milk on the same premises to pay a Class I price interferes with the supply of milk that is reaching the public. On the other hand, the commission's concern is that the integrity of the price structure it established would be threatened if milk purchases at the lower Class II price could be used with impunity as Class I milk. It is not difficult to imagine the burdensome task involved in determining how much milk a restaurant would use as a beverage and how much it consumed in food preparation. Appellant has suggested enforcement expedients

which the commission apparently does not deem desirable. The commission avers that additional administrative burdens relating to enforcement and control are not present when an exemption is permitted for an exclusively manufacturing establishment, which possesses no facilities for selling milk as a beverage.

It may be contended that the commission has discretionary power and authority to decontrol or permit a pricing structure having as its foundation the negotiation of prices between such buyers as Davis and their suppliers involving milk used for food preparation on the same premises where milk is also sold to consumers. But it cannot be said that the commission, in promulgating its orders refusing to exercise such power, acted outside of its authority.

Section 906 of the Pennsylvania Milk Control Law defines the scope of review in appeals from either general or special orders of the commission as follows:

"Upon any appeal the court shall determine whether or not the order appealed from is reasonable and in conformity with law. The appellant shall have the burden of proving that an order of the commission is unreasonable or illegal".

The commission argues that, in issuing its general orders, it took into consideration the conditions affecting the milk industry in each milk marketing area and determined a reasonable return to the milk dealer or handler. Section 801, as amended, of the Milk Control Law provides that all price-fixing orders of the commission shall be presumed to be valid. There is nothing on the record disputing the position that the commission acted within its legal sphere in promulgating its general orders. Only is it entreated that the commission should grant the exemption proposed for restaurants and the refusal to do so is unreasonable. If, in carrying out its duties, this commission has adopted a policy which appellant disagrees with, this is not

sufficient to nullify the orders of the commission. If this policy should be changed, it would be the responsibility of the legislature and not that of the courts. The court cannot retry the issue or reverse the commission simply because it disagrees with the decision.

Accordingly, we enter the following

ORDER

And now, December 29, 1966, the appeal of John F. Davis Company is dismissed, and the order of the Pennsylvania Milk Control Commission dismissing the petition requesting an exemption from the resale pricing provisions of the existing general orders applicable to all milk marketing areas of the Commonwealth, with regard to the sale and delivery of bulk milk and cream to restaurants for use on the premises for the preparation of foods, is sustained .