## United Virginia Bank/National v. Charnita, Inc.

*Michael Bianchini,* for plaintiff.
*Donald G. Oyler,* for exceptant.
*Wayne Dietrich,* for Commonwealth.

MacPHAIL, *P. J.,* December 30, 1975—In this matter, we have for disposition exceptions to an auditor's report. The auditor has performed his duties in a commendable manner.

Charnita, Inc. owned considerable real estate in Adams County. Charnita, Inc. has been adjudicated a bankrupt. The United Virginia Bank/National, formerly United Virginia Bank of Fairfax (hereinafter referred to as "Virginia Bank") executed on a judgment it obtained against Charnita, Inc. At or about the same time, York Federal Savings and Loan Association (hereinafter referred to as "York Federal") also executed on a judgment it had obtained against Charnita, Inc. The sheriff filed his return on both executions and exceptions were filed thereto. The same auditor, Edward B. Bulleit, Esq., was appointed to dispose of those exceptions. His report in the proceedings involving York Federal has been filed and approved. Excep-

tions filed to his report were denied and no appeal has been taken from our order confirming his report in that matter. (Execution no. 11, October 1973, judgment no. 18, October 1973.)

Exceptions were filed to the sheriff's proposed distribution in the matter now before us by the Commonwealth of Pennsylvania. No allowance had been made in the sheriff's schedule for a corporate tax lien filed by the Commonwealth against Charnita, Inc. in the sum of $67,483.02. The schedule of proposed distribution filed in the execution proceedings by York Federal awarded the Commonwealth its claim of $67,483.02 in full. In that proceeding, the United States filed an exception to the payment of the entire amount of the Commonwealth's claim. As a result of a stipulation executed between York Federal and the United States, the issue raised by the United States was resolved by the payment of $18,100 to the Commonwealth of Pennsylvania by York Federal and the distribution of the balance in the manner agreed upon by the United States and York Federal. It was noted in that report that the sum of $18,100 was paid to the Commonwealth in exchange for a release from the Commonwealth as to the real estate subject to that execution.

Therefore, at this point, the Commonwealth still has a claim against Charnita, Inc. in the sum of $67,483.02, less a credit of $18,100 paid to the Commonwealth in the York Federal proceedings. It must also be noted that other execution proceedings are still pending against Charnita, Inc.

In the matter now before us, a total of seven hearings were held by the auditor. At the second hearing held September 6, 1974, a Mr. Dietrich, representing the interest of the Commonwealth, entered an

exhibit representing "figures that were worked up by the Bureau of Corporation Taxes." That exhibit (now attached to the auditor's report as exhibit A) is an authorization to Mr. Dietrich from the Acting Chief of the Legal Division of the Bureau of Corporation Taxes, Department of Revenue, to Mr. Dietrich "to collect $25,502.31 against the purchaser at the May 22, 1974, judicial sale of real estate out of Charnita, Inc." Attached to the authorization is a memorandum explaining the basis upon which the allocation was reached. The memorandum specifically refers to the prorating which had been done in the York Federal sale. Also of significance in the memorandum is the statement, "If a release were to be obtained on the second sheriff's sale (May 22, 1974), the release consideration would be $25,502.31. . . ." There is no stipulation or release made a part of the record in this case similar to that attached to the auditor's report in the York Federal case. Section 1401 of the Act of April 9, 1929, P.L. 343, as amended, 72 P.S. §1401, provides, inter alia, that the Department of Revenue, with the approval of the Attorney General and the Auditor General, "may release from the lien of such taxes, such part or parts of the real property of any corporation, as may be requested by such corporation or owners or lien creditors thereof, upon payment of such proportionate part of the taxes due as the value of the real property released bears to the value of all the real property bound by such lien." Obviously, exhibit A in the proceeding now before us is a calculation based upon that statutory provision.

At the seventh and last hearing before the auditor, a question was raised by the attorney for one of the creditors concerning the validity of the calcu-

lation in exhibit A and the authority of the Commonwealth to release the lien of its claim against the fund realized from the sale of the subject real estate as well. After an extended discussion among counsel and the auditor, but no testimony, Mr. Dietrich requested leave of the auditor to withdraw the "previous stipulation" with United Virginia Bank (exhibit A) and require the bank to pay the full amount of the Commonwealth's corporate tax lien. Mr. Dietrich explained the reasons for his actions in requesting the withdrawal of exhibit A as being that, while the Commonwealth may release its lien, it is not required to do so and that there were "circumstances" in the York Federal execution which did not exist in the current Virginia Bank proceeding. Naturally, Virginia Bank opposed the request for withdrawal. The record does not indicate that the auditor either granted or refused Mr. Dietrich's request. However, since his report recommends allowance of the Commonwealth's claim in the amount of $25,502.31, it is apparent that Mr. Dietrich's request was refused. *No exception has been filed by the Commonwealth to the auditor's report.*

At the third hearing before the auditor, held October 4, 1974, Donald G. Oyler, Esq., presented testimony concerning the judgment of Adams County National Bank against Charnita, Inc., February 1973 (no. 242), which was subsequently assigned to Charles W. Wolf, Donald G. Oyler and H. Thomas Pyle. Mr. Oyler also represented the assignees of that judgment in the proceedings before the auditor. From that testimony it would appear that the judgment would take priority after the various judgments of Virginia Bank. Both the sheriff's amended schedule of proposed distribution, which

allowed the Commonwealth nothing, and the auditor's schedule of distribution, which allowed the Commonwealth $25,502.31, show that the last of Virginia Bank's judgments would not be satisfied by the proceeds of the sale of real estate. The real estate was purchased at the sheriff's sale by Virginia Bank.

The *only* exception filed to the auditor's report was that of Mr. Oyler representing the assignees of the Adams County National Bank judgment. The basis of the exception is the award to the Commonwealth in the sum of $25,502.31. It is the contention of the exceptants that the Commonwealth should have been awarded the full amount of its claim, less only a credit for the $18,100 paid to the Commonwealth in the York Federal execution. The auditor denied the exception and the exceptants have now renewed their exceptions to this court. In the auditor's original report and his report disposing of the exception of the assignees of the judgment, mention is made of other execution proceedings against Charnita, Inc., where rights of creditors in that proceeding may be affected by the disposition of the Commonwealth's tax claim in the matter now before us.

The posture of the case, as simply stated as we can do so, is that the auditor has awarded less than the full amount of the Commonwealth's claim for corporate taxes. The Commonwealth has not objected to that award, notwithstanding the attempt of the Commonwealth to withdraw its previous acquiescence to the amount finally allowed by the auditor. The exception is filed by creditors who will not benefit in this proceeding even though we rule in their favor. If we sustain the exception now before us, Virginia Bank will be prejudiced thereby

because they will not recover the full amount due them even if the exception is denied. Virginia Bank opposes the position of the exceptant.

Two questions must be addressed to resolve the issue of whether the exception should be sustained; first, the standing of the exceptants to object, and, secondly, assuming that the exceptants have standing, the validity of the auditor's award of less than the full amount of the Commonwealth's lien. No authority has been cited to guide us in this matter and we have found none. The two cases cited in the auditor's report (Century Vault Company, 416 F. 2d 1035 (3d Cir., 1969), and In re Pennsylvania Central Brewing Co., 135 F. 2d 60 (3d Cir., 1943)), as indicated by the auditor himself, pertain to bankruptcy proceedings, and, while the language is helpful, would certainly not be controlling of the issues now before us.

The general rule is that an appellant may not successfully complain on appeal of an alleged error which affects only another party who did not appeal or complain: 5 Am. Jur. 2d, Appeal and Error, §706. The holder of a subsequent lien not reached by a sheriff's distribution on real estate which is the subject of execution proceedings has standing to file exceptions to the sheriff's schedule of distribution: Bucks County Bank and Trust Company v. Frey, 36 D. & C. 2d 382 (1965). However, the standing of the assignees of the judgment, who are the exceptants now before us, to file exceptions to the sheriff's schedule of distribution is not before us. As we previously noted, the only exception filed to the sheriff's proposed schedule of distribution was that of the Commonwealth.

In support of their standing to except to the auditor's distribution, the exceptants point out, as did

the auditor, that if the Commonwealth is not paid in full in this proceeding, the application of the "circuity of liens" rule will result in the judgment of exceptants not being paid in subsequent execution proceedings because of the intervention of a United States tax lien. While equitable considerations are observed in execution proceedings (see McCune v. McCune, 164 Pa. 611, 613, 30 Atl. 577 (1894)), we must also keep in mind those same considerations with respect to the interests of Virginia Bank. If the issue here was restricted to the interests of the exceptants and the Commonwealth, we might, indeed, reach an opposite result. However, since the interests of Virginia Bank will be adversely affected by a decision that the Commonwealth's judgment be paid in full, we must hold that the exceptants here have no standing to object to the auditor's award. It has been said that a cardinal principle which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a direct interest in the subject matter of the particular litigation, his interest must be immediate and pecuniary and not a remote consequence of the judgment and the interest must be substantial: Lansdowne Borough Board of Adjustment's Appeal, 313 Pa. 523, 170 Atl. 867 (1934), and Atlee Estate, 406 Pa. 528, 178 A. 2d 722 (1962). While it may be true, as argued by the exceptants, that they will not recover anything on their judgment by reason of the application of the circuity of liens rule to a subsequent execution proceeding, such a conclusion is far from certain and may involve many factors not yet on the record. Exceptants here cannot say that their interest is immediate and pecuniary. Furthermore, if we rule in favor of the exceptants here to the detriment of

Virginia Bank and it later turns out that the circuity of liens rule does not apply in subsequent execution proceedings against Charnita, Inc., a grave injustice will have been done to United Virginia Bank.

Certainly, the absence of any appellate authority in this matter is very troublesome to us. Therefore, we feel compelled to address the second issue even though we have held that the exceptants are without standing to raise it. We hold that the auditor did not err in making an award to the Commonwealth based upon the exhibit originally introduced by the Commonwealth.

There is a general rule that a lien creditor whose lien extends to several tracts of real estate may pass the first execution fund and come in upon a second one. Horning's Executors' Appeal, 90 Pa. 388 (1879). The exceptants argue that since there is nothing in the record of this proceeding which indicates that the Commonwealth has entered into any agreement to release the subject real estate upon payment of less than the full amount of taxes due as authorized by the Act of 1929, supra, 72 P.S. §1401, the Commonwealth is somehow bound to take the full amount due it on its lien in this proceeding. When the Commonwealth endeavored to withdraw the exhibit, Virginia Bank protested. In his report, the auditor resolved the question in favor of the Virginia Bank. *The Commonwealth* clearly had the right to except to the auditor's finding. It didn't do so. The only parties *directly* involved in this dispute are the Commonwealth and Virginia Bank. Since the Commonwealth has elected not to press its claim for the full amount of the lien (a presumption we are required to make by virtue of their failure to file exceptions to the auditor's report), we assume that they are relying upon the general rule applying

to all creditors that they may pass the first fund and look to succeeding funds for payment. Where this places them in future proceedings, we need not determine here. We are not unmindful that the general rule is subject to exceptions but those exceptions are not applicable in *this* proceeding.

In summary, we do not think that the auditor erred in awarding the Commonwealth less than the full amount of its claim based upon the Commonwealth's own calculation of what portion of their claim would be allocable to the subject real estate, * nor do we think that the auditor erred when he held that prorating of the Commonwealth's claim consistent with what it had done in the prior proceeding was fair and equitable to Virginia Bank in the present proceeding. In resolving all of the questions presented in the matter now before us, the overriding consideration is the Commonwealth's failure to *except or object to the auditor's findings. We do not* think it is necessary in law or equity to disturb those findings. If we did so, we would obviously be prejudicing the rights of Virginia Bank.

## DECREE OF COURT

And now, December 30, 1975, it is decreed that the exception filed by the assignees of Judgment no. 242, February term 1973, be and the same is hereby denied. It is further decreed that the auditor's report as filed be and the same is hereby confirmed absolutely.

---

*While the auditor did not justify his findings on the basis that an exact determination of Charnita's corporate tax liability had not yet been made, there was testimony to that effect in the hearings before him.